For the foregoing reasons, KPMG's motion to dismiss is hereby denied.

945 A.2d 149

JOHN PAFF, PLAINTIFF v. DIRECTOR, OFFICE OF ATTORNEY ETHICS AND PHILIP G. GENTILE, DEFENDANTS.

Superior Court of New Jersey
Law Division Mercer County

Decided September 28, 2007.

636

*John Paff,* plaintiff pro se.

*Anne Milgram,* Attorney General of the State of New Jersey, for the defendants (*David B. Bender,* Deputy Attorney General, on the Brief).

FEINBERG, A.J.S.C.

On January 24, 2007, Philip Gentile ("Gentile") signed an affidavit of disbarment by consent. *R.* 1:20–10(a)(2). At the time, two disciplinary actions were pending for the knowing misappropriation of client funds. The record reflects, on or about March 6, 2007, plaintiff learned about the disbarment from an article in the newspaper. Seeking additional information, plaintiff contacted the Hunterdon County Prosecutor's office. Plaintiff also inquired as to whether David E. Johnson, Jr. ("Johnson"), Director of the Office of Attorney Ethics ("OAE"), had exercised his discretion to notify that office.

In response, on March 8, 2007, the Prosecutor advised plaintiff that no correspondence, files, or referrals had been received from OAE in regard to Gentile's disbarment:

> With respect to your request that my office investigate this criminal case, be advised that our office has previously completed an investigation concerning Mr. Gentile. The result of that investigation was that there was no evidence to conclude that any criminal conduct ever occurred within our jurisdiction. That is all I am permitted to say with respect to that investigation.

On March 12, 2007, plaintiff requested from OAE copies of complaints, grievances, or other records. On March 13, 2007, subsequent to disbarment by consent, Johnson released Gentile's affidavit and the Supreme Court's order accepting the disbarment. No other documents were released. Plaintiff argues the documents did not disclose the identity of the victims, the location(s)

where the misconduct occurred, the amounts misappropriated and whether OAE notified law enforcement authorities.

On April 25, 2007, plaintiff filed a complaint in lieu of prerogative writs against the Director, OAE and Gentile seeking access to investigative files. On June 28, 2007, OAE filed a motion to extend the time to answer or otherwise plead. *R.* 4:6–1. On July 20, 2007, the court granted the motion. Despite diligent efforts to effectuate personal service upon him, the whereabouts of Gentile are unknown. *R.* 4:4–7. On July 31, 2007, OAE filed a motion to dismiss the complaint. *R.* 4:6–2(e).

To support the motion to dismiss, OAE argues: (1) the investigatory documents are confidential pursuant to *R.* 1:38(d) and *R.* 1:20–9; and (2) *R.* 1:20–9(a) preempts a common law right of access claim. In the alternative, OAE asserts: (1) the investigative records are not "public records" subject to the common law right of access; (2) the records, created in anticipation of litigation, are exempt under the work product doctrine and the deliberative process privilege; (3) plaintiff has not established a sufficiently particular need for access to the files; and (4) the need for confidentiality of the investigative files greatly outweighs the interest of the plaintiff in disclosure.

On August 14, 2007, plaintiff filed a cross-motion for the court to conduct an *in camera* review and compel OAE to submit a privilege log. On August 28, 2007, defendant filed opposition. *R.* 4:6–2, in pertinent part, provides:

Every defense, legal or equitable, in law or fact, to a claim for relief in any complaint, counterclaim, cross-claim, or third-party complaint shall be asserted in the answer thereto, except that the following defenses may at the option of the pleader be made by motion, with briefs: ... (e) failure to state a claim upon which relief can be granted ... If a motion is made raising any of these defenses, it shall be made before pleading if a further pleading is to be made.

The Supreme Court has distinctly set forth the public's right of access to records maintained by the judicial branch of government. *Rule* 1:38, entitled "Confidentiality of Court Records", provides:

All records required by statute or rule to be made, maintained or kept on file by any court, office or official within the judicial branch of government shall be

deemed a public record and shall be available for public inspection and copying, as provided by law.

In formulating *R.* 1:38, the Court exempted from public access and disclosure certain documents. These include:

(a) Personnel and pension records;

(b) Criminal, Family and Probation Division records pertaining to investigations and reports made for a court or pertaining to persons on probation;

(c) Completed jury questionnaires, which shall be for the exclusive use and information of the jury commissioners and the Assignment Judge, and the preliminary lists of jurors prepared pursuant to N.J.S. 2A:70–1 and 2, which shall be confidential unless otherwise ordered by the Assignment Judge;

(d) Records required by statute or rule to be kept confidential or withheld from indiscriminate public inspection;

(e) Records in any matter which a court has ordered impounded or kept confidential;

(f) Records of programs approved for operation under R. 3:28 and reports made for a court or prosecuting attorney pertaining to persons enrolled in or under investigation for enrollment in such programs;

(g) Records of programs approved for operation under R. 7:8–1;

(h) Reports required to be prepared for trial court judges and municipal court judges on a weekly, monthly, or other basis and submitted to the Administrative Director of the Court pursuant to R. 1:32–1;

(i) Records and information obtained and maintained by the Judicial Performance Committee pursuant to R. 1:35A, except as otherwise provided in that rule;

(j) Discovery materials obtained by the criminal division manager's office from the prosecutor pursuant to R. 3:9–1 and R. 3:13–3.

Unfiled discovery materials in any action shall not be deemed under this rule to be public records available for public inspection and copying.

[*R.* 1:38.]

"Records required by statute or rule to be kept confidential or withheld from indiscriminate public inspection" are exempt from disclosure. *R.* 1:38(d). Investigative files maintained by OAE fall within this exemption. In pertinent part, *R.* 1:20–9(a) provides:

Prior to the filing and service of a complaint in a disciplinary matter, or a motion for final or reciprocal discipline, or the approval of a motion for discipline by consent, the disciplinary matter and all written records gathered and made pursuant to these rules shall be kept confidential by the Director, except that the pendency, subject matter, and status of the grievance may be disclosed by the Director if:

(1) the respondent has waived or breached confidentiality; or

(2) the proceeding is based on allegations of reciprocal discipline, a pending criminal charge, or a guilty plea or conviction of a crime, either before or after sentencing; or

(3) there is a need to notify another person or organization, including the Lawyers' Fund for Client Protection, in order to protect the public, the administration of justice, or the legal profession; or

(4) the Supreme Court has granted an emergent disciplinary application for relief; or

(5) the matter has become common knowledge to the public.

[*R.* 1:20–9(a).]

After a disciplinary complaint is filed or certain motions are granted, a limited class of documents become subject to disclosure. For example:

Subject to paragraph (a) and (c), on the filing and service of a complaint, a disciplinary stipulation waiving the filing of a formal complaint, a motion for final or reciprocal discipline or the approval of a motion for discipline by consent (except for documents submitted in connection with confidential prehearing conferences), those documents, as well as the documents and records filed subsequent thereto, shall be available for public inspection and copying.

[*R.* 1:20–9(d)(1).]

The Supreme Court, similar to many other states, in exercising its administrative and plenary authority, has excluded from public access investigative files and materials prepared, obtained, or created prior to the filing of a complaint, *R.* 1:38 and *R.* 1:20–9(a). As a result, an applicant is not entitled to the release of these documents by application of the common law balancing test.

In *R.M. v. Supreme Court of New Jersey,* 185 *N.J.* 208, 229, 883 *A.*2d 369 (2005), the Court addressed the right to freedom of speech of persons bringing attorney ethics complaints under *R.* 1:20–9, and also re-affirmed the principle that disciplinary authorities continue to be bound by the confidentiality provisions. Importantly, the Court held:

[O]ur holding does not alter the requirement that disciplinary authorities continue to be bound by the confidentiality provisions in Rule 1:20–9. As provided for in Rule 1:20–9(a) and (i), "all written records" compiled by the investigator and the District Ethics Committee "received and made pursuant to" the investigation are not to be made public by disciplinary officials except as provided in that Rule. The disclosure of sensitive and frequently privileged information is neither required by constitutional principle nor reflective of good policy.

[*Id.* at 229, n. 3, 883 *A*.2d 369.]

Additionally, the Court stated:

Further, documents that are gathered during the ethics proceedings are not to be released publicly by disciplinary officials except as provided for in Rule 1:20–9(a), (i). See *supra* pp. 8–9 (listing exceptions to the confidentiality rule). These rules apply in this appeal and to all ethics matters currently pending.

[*Id.* at 231, 883 *A*.2d 369.]

In *Nero v. Hyland,* 76 *N.J.* 213, 226–27, 386 *A*.2d 846 (1978), the New Jersey Supreme Court determined it was inappropriate to apply a balancing test to determine whether documents obtained or created by the Attorney General while investigating the character of gubernatorial appointments should be made public. The Court held that such investigative documents were to remain confidential and "no common law right to total access or in camera inspection exists with respect to materials gathered in character investigations of this kind." *Ibid.*

█ This case is analogous to *R.M.* A balancing test is not required when records have been declared confidential. In essence, the rule-making authority of the Supreme Court, preempts a common law balancing test.

Plaintiff's reliance on two cases is misplaced. First, plaintiff relies on *In re Johnson,* 461 *N.W.*2d 767 (S.D.1990) to support the notion that a common law right of access applies in this case. In *In re Johnson,* Johnson submitted an affidavit to the Disciplinary Review Board consenting to disbarment and acknowledging the truthfulness of the accusations asserted against him. *Id.* at 770. In response to this request, the Court ordered Johnson and the State Bar to show cause why the contents of the affidavit should not be released. *Id.* at 768.

After a hearing, the Court, relying on the statute governing the disclosure of affidavits, released the affidavit. *Ibid.* In pertinent part, the statute provides " . . . the affidavit required under the provisions of [*S.D.C.L.*] 16–19–65 shall not be publicly disclosed or made available for use in any other proceeding except upon order

to the Supreme Court." *Ibid.* (quoting *S.D. Codified Laws* § 16–19–66).

In South Dakota, in order to secure a copy of an affidavit, an applicant is required to apply to the Supreme Court. *Ibid.* The words, "except upon order to the Supreme Court", established a need for an applicant to establish certain criteria to permit disclosure. *Ibid.* (quoting *S.D. Codified Laws* § 16–19–66). Importantly, the statute did not address the release of pre-decisional or investigatory files prepared by the Disciplinary Review Board prior to the filing of a complaint or related to the Order of Disbarment.

Given the discretion by the South Dakota Supreme Court to release or withhold an attorney affidavit, the Court elected to apply a traditional common law type balancing test to identify and weigh the interests of the attorney, the public's right to know, and any third-party privacy interests. *In re Johnson, supra,* 461 *N.W.*2d at 769. In describing the common law balancing test, the Court stated that "a common law right exists to inspect and copy judicial records." *Ibid.* While the Court never defined "judicial records," each of the cases cited in the opinion relates to the public's right to access to evidence produced in a civil or criminal proceeding before the trial court. *Ibid.*; *see United States v. Hickey,* 767 *F.*2d. 705, 708 (10th Cir.1985); *In re Knight Publishing Co.,* 743 *F.*2d 231, 235 (4th Cir.1984); *In re National Broadcasting Co., Inc.,* 653 *F.*2d 609, 612 (D.C.Cir.1981).

In *In re Johnson, supra,* 461 *N.W.*2d at 769, the Court limited the common law balancing test to the release of the affidavit in support of the order of disbarment. Unlike the case before this court, there was no request for investigatory records collected, received, or prepared prior to the filing of a formal complaint. Given the record and statutes in South Dakota, clearly that application, if made, would have been denied.

Plaintiff also cites *Daily Gazette Co., Inc. v. Committee on Legal Ethics of the West Virginia State Bar,* 174 *W.Va.* 359, 326 *S.E.*2d 705 (W.Va.1984), to support a constitutional right of access

to records relating to attorney disciplinary proceedings. In *Daily Gazette Co, Inc.*, the West Virginia Supreme Court of Appeals held under the West Virginia Constitution art. III, § 17 [1], a right of public access to attorney disciplinary proceedings exists. *Id.* at 711. The right to public access included all reports, records, and non-deliberative materials introduced at any attorney disciplinary hearing, including the record of the final action taken. *Id.* at 713.

New Jersey does not have a comparable constitutional provision. In *Daily Gazette Co., Inc.*, a determination had been made that probable cause existed to substantiate certain allegations and formal disciplinary charges had been filed. *Id.* at 712–13. As a result, the court held, "the hearing on such charges shall be open to the public, who shall be entitled to all reports, records, and non-deliberative materials introduced at such hearing, must be publicly accessible, including the record of the final action taken." *Id.* at 713. In West Virginia, like New Jersey, the right to access arises only when formal charges have been filed.

Specifically, *R.* 1:20–9(d)(1) provides that, "on the filing and service of a complaint, ... [that] document[ ], as well as the documents and records filed subsequent thereto, shall be available for public inspection and copying." Therefore, as in West Virginia, New Jersey has acknowledged there is a right to public access and disclosure once formal charges have filed.

Importantly, *Daily Gazette Co., Inc., supra*, 326 *S.E.*2d at 713, does not address the right of access to pre-complaint documents. However, the constitutional provision limits the release of documents to post-complaint documents and filings. *Ibid.* Against this backdrop, there is no entitlement to documents or reports in the possession of the Disciplinary Review Board prior to the filing of a complaint.

Both parties cite *Nixon v. Warner Communications, Inc., et al.* 435 *U.S.* 589, 98 *S.Ct.* 1306, 55 *L.Ed.*2d 570 (1978). Plaintiff

---

[1] This provision provides in pertinent part, "The courts of this State shall be open."

argues *Nixon* gives members of the public the general right to inspect and copy judicial records and documents. Importantly, *Nixon* addressed the release of portions of taped conversations played during trial. *Id.* at 591, 98 *S.Ct.* 1306. In *United States of America v. Charles Kushner,* 349 *F.Supp.*2d 892 (D.N.J.2005), the District Court addressed the meaning of the term "judicial record." The court noted that what constitutes a "judicial record" hinges on "whether a document in the Court's possession has been filed with the court, or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings." *Id.* at 902. (quoting *In re Cendant Corp.,* 260 *F.*3d 183, 192 (3d Cir. 2001)).

In *Cendant,* the court recognized the long-standing doctrine that in both criminal and civil cases, a common law public right of access exists to judicial proceedings and records. *In re Cendant Corp., supra,* 260 *F.*3d at 192. "The public's right of access extends beyond simply the ability to attend open court proceedings. Rather, it envisions a 'pervasive common law right to inspect and copy public record and documents, including judicial records and documents.'" *Ibid.* (quoting *Leucadia, Inc. v. Applied Extrusion Tech., Inc.,* 998 *F.*2d 157, 161 (3d Cir.1993)).

In the context of the public's right to access of "judicial records" the cases characterize "judicial records" as documents admitted into evidence presented during a criminal or civil proceeding before a trial court. *See Nixon, supra,* 435 *U.S.* at 597–98, 98 *S.Ct.* 1306; *In re Cendant Corp., supra,* 260 *F.*3d at 192; *Kushner, supra,* 349 *F.Supp.*2d at 898. Clearly, the right of access to judicial records, to wit, evidence admitted during an adjudicatory proceeding, represents the logical extension of the First and Sixth Amendment rights of citizens to attend, subject to strict limitations, these type of judicial proceedings.

Finally, even assuming the records sought herein are considered to be judicial records subject to the common law balancing test, the interest of the State in nondisclosure outweighs the interest of the plaintiff in disclosure. *See S. New Jersey Newspa-*

*pers, Inc. v. Twp. of Mt. Laurel,* 141 *N.J.* 56, 72, 660 *A.*2d 1173 (1995); *Higg–A–Rella, Inc. v. County of Essex,* 141 *N.J.* 35, 46, 660 *A.*2d 1163 (1995).

In order to invoke the common law right of access to public records, a plaintiff must meet three requirements: (1) the records must be common law documents; (2) the plaintiff must establish an interest in the subject matter of the material; and (3) the plaintiff's right to access must be balanced against the State's interest in preventing disclosure. *Keddie v. Rutgers,* 148 *N.J.* 36, 50, 689 *A.*2d 702 (1997). The court will address each one separately.

Under the common law, a "public record" is:

[o]ne required by law to be kept, or necessary to be kept in the discharge of a duty imposed by law, or directed by law to serve as a memorial and evidence of something written, said, or done, or a written memorial made by a public officer authorized to perform that function, or a writing filed in a public office. The element essential to constitute a public record are ... that it be made by a public officer, and that the officer be authorized by law to make it. . . .

[*Nero v. Hyland, supra,* 76 *N.J.* at 222, 386 *A.*2d 846; *see also Irval Realty Inc. v. Bd. of Public Utility Commissioners,* 61 *N.J.* 366, 375, 294 *A.*2d 425 (1972); *Josefowicz v. Porter,* 32 *N.J.Super.* 585, 591, 108 *A.*2d 865 (App.Div.1954).]

OAE argues investigative documents are not public records. OAE identifies two categories of documents: (1) documents received and collected by OAE; and (2) reports and analyses prepared by or created by OAE in the course of an investigation. Documents collected by OAE include Gentile's financial records as well as other documents related to his representation of the ethics complainants and other clients.

In challenging the common law, OAE asserts: (1) the documents are not "filed with a public agency"; (2) the documents are not memorials made by a government officer or on behalf of the government; and (3) the rules governing attorney disciplinary procedures provide that only a formal disciplinary complaint and any documents filed with it are considered "filed."

In response, plaintiff argues: (1) OAE is a "public office"; (2) a record in the possession of OAE constitutes a "writing filed in a

public office"; and (3) documents received from outside sources, but filed with OAE, are common law records although not made by public officers. The court agrees. *See Nero, supra,* 76 *N.J.* at 222, 386 *A.*2d 846; *Irval Realty, Inc., supra,* 61 *N.J.* at 375, 294 *A.*2d 425; *Josefowicz, supra,* 32 *N.J.Super.* at 591, 108 *A.*2d 865.

While OAE characterizes a document "as filed" only after the filing of a complaint, this designation does not control the definition of a "filed" document under the common law. Clearly, documents prepared by OAE, as well as documents collected by or received by OAE from outside sources, in the possession of a public agency, qualify as common law records.

OAE asserts reports, notes or memoranda prepared by OAE qualify as work product or fall within the deliberative process privilege under *In re Liquidation of Integrity Insurance Co.,* 165 *N.J.* 75, 80, 754 *A.*2d 1177 (2000). Reports and analyses prepared by OAE investigators, attorneys and staff, will undoubtedly include pre-filing investigation notes, witness lists, and reports with specific recommendations. Documents collected by and received by OAE also contain privileged information, to wit, financial records of the attorney and client, communications between the attorney and client and details of the representation provided by an attorney to a particular grievant.

The reports and analyses created and prepared by OAE are shielded from public access by the work product doctrine and the deliberative process privilege. *R.* 1:20–9; *see Redland Soccer Club, Inc. v. Dept. of Army of U.S.,* 55 *F.*3d 827, 853 (3d Cir.1995); *In re Grand Jury,* 821 *F.*2d 946, 959 (3d Cir.1987). In the administrative determinations issued in response to the 1993 Report of the New Jersey Ethics Commission, the New Jersey Supreme Court accepted and adopted the Committee's recommendation that "internal documents of the OAE ... and the work product of its attorneys, including interviews with potential witnesses" should not be made available to the public. New Jersey Law Journal, 137 *N.J.L.J.* 1176, (July 18, 1994).

■ Therefore, any reports prepared by OAE investigators for use by OAE attorneys in preparing possible ethics charges constitute privileged work product. The reports were generated in anticipation of litigation of ethics charges. Likewise, documents in the OAE investigative file reflecting the thought processes of OAE attorneys and communications between attorneys and investigators or witnesses are privileged work product.

■ Furthermore, the reports and analyses by OAE fall within the deliberative process privilege. The deliberative process privilege was formally recognized in New Jersey in *In re Liquidation of Integrity Insurance Co., supra,* 165 *N.J.* at 84, 754 *A.*2d 1177. There, the New Jersey Supreme Court held that while relevance generally creates a presumption of discoverability, confidentiality should nevertheless be maintained if the government establishes that the privilege exists. *Id.* at 83, 754 *A.*2d 1177. The Court defined the privilege as a "doctrine that permits the government to withhold documents that reflect advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Ibid.*

■ The Open Public Records Act ("OPRA") provides that government records "shall not include inter-agency or intra-agency advisory, consultative, or deliberative material." *N.J.S.A.* 47:1A–1.1. When determining whether a litigant has overcome the presumption against non-disclosure, factors to consider include: 1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions. *In Re Liquidation of Integrity Insurance Co., supra,* 165 *N.J.* at 85–86, 754 *A.*2d 1177.

Courts have repeatedly recognized the need for government agencies to engage in the free and open exchange of ideas in the development and implementation of new policies and procedures. In *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.,* 421 *U.S.*

132, 151, n. 18, 95 *S.Ct.* 1504, 1517, 44 *L.Ed.*2d 29, 48 (1975), the United States Supreme Court stated:

> Our emphasis on the need to protect pre-decisional documents does not mean that the existence of the privilege turns on the ability of an agency to identify a specific decision in connection with which memorandum is prepared. Agencies are, and properly should be, engaged in a continuing process of examining their policies.

The deliberative process privilege protects communications that are part of the decision making process of a governmental agency. *Ibid.* The purpose of the privilege is to "prevent injury to the quality of agency decisions." *Ibid.* Despite this protection, factual information shall be discoverable unless it is "inextricably intertwined" with the deliberative information. *Envtl. Prot. Agency v. Mink,* 410 *U.S.* 73, 93 *S.Ct.* 827, 837, 35 *L.Ed.*2d 119, 132 (1973).

If the court determines that a privilege exists or that an agency is entitled to withhold documents, the next issue is whether the applicant has demonstrated a compelling need to disclose the documents that substantially outweighs the agency's interest in protecting them. As noted by Justice Long in *In re Liquidation of Integrity Insurance Co., supra,* 165 *N.J.* at 85, 754 *A.*2d 1177:

> Despite the existence of the privilege, with its concomitant presumption against disclosure, a litigant may obtain deliberative process materials if his or her need for the materials and the need for accurate fact-finding override the governments' significant interest in non-disclosure.
>
> As with any privilege, the party seeking such documents bears the burden of showing a substantial or compelling need for them. **In all but exceptional cases it is considered against the public interest to compel government to produce inter-agency advisory opinions.**
>
> [(citations omitted) (emphasis added).]

If a court determines that records are privileged, under the common law, the court must also examine the interest of the requesting party and weighs his or her interest in disclosure against the agency's interest in non-disclosure. For records received, collected and maintained by OAE, that may not be covered by work-product or the deliberative process privilege the court

will also apply the second and third prongs of the common law balancing test.

Under the common law, as a threshold condition for access, a plaintiff must establish an interest in the subject matter of the material he or she is seeking. *S. New Jersey Newspapers, Inc., supra,* 141 *N.J.* at 70–71, 660 *A.*2d 1173. However, where the inquiry relates to disclosure of confidential investigative records, such as the OAE documents, the party seeking disclosure must show a "particularized need that outweighs the public interest in the confidentiality of the investigative proceeding." *McClain v. College Hosp.,* 99 *N.J.* 346, 361–62, 492 *A.*2d 991 (1985). This requirement applies even when the person seeking disclosure is a citizen seeking to further the public good. *See Loigman v. Kimmelman,* 102 *N.J.* 98, 104, 106, 505 *A.*2d 958 (1986).

Courts have developed a three-part test in assessing whether a party has articulated a sufficiently compelling particularized need. These include: (1) the extent to which the information may be available from other sources; (2) the degree of harm that the litigant will suffer from its unavailability; and (3) the possible prejudice to the agency's investigation. *McClain, supra,* 99 *N.J.* at 351, 492 *A.*2d 991.

In the case at bar, plaintiff seeks OAE investigative files regarding possible criminal investigations by law enforcement agencies arising from the same circumstances that led to the ethics charges. This information is available from other sources. As the pleadings disclose, plaintiff has already sought information from at least one local law enforcement agency, the Hunterdon County Prosecutor's office.

Furthermore, the certification by plaintiff, attached to the opposition to the motion to dismiss, refers to documentation for several charges filed against Gentile. This includes a drug possession charge from the North Hunterdon Municipal Court, related motor vehicle charges, an accusation and waiver of indictment charge for

possession of drugs from Hunterdon County, a summons issued by the Washington Township Municipal Court, an accusation, waiver of indictment, judgment of conviction and plea form, signed by Gentile, for a bad check charge arising in Warren County.

While plaintiff asserts an interest in these records, if they are not provided by OAE, plaintiff will not have incurred any harm. Plaintiff has not claimed that he was a client of Gentile or that he has any personal reason, other than providing this information to the public, to obtain the documents.

Importantly, where law enforcement agencies seek access to confidential OAE investigative files, such agencies are required to either file a motion to obtain a court order for the release of such documents or seek access by way of subpoena. The Disciplinary Review Board determines whether "good cause" exists for the release of the documents. *See R.* 1:20–9(f)(2). If good cause is found, the OAE is required to only release said documents subject to the provision "that the information submitted remain confidential and be used solely for admissions or disciplinary purposes in that jurisdiction." *R.* 1:20–9(e).

Apparently, plaintiff seeks to determine whether Johnson disclosed to law enforcement agencies information developed in the investigation against Gentile. Importantly, *R.* 1:20–9(f) provides that both prior to and after the filing of a complaint, the Director of OAE "may refer any matter to law enforcement authorities." Clearly, this language gives the Director of OAE the discretion to refer matters to law enforcement authorities if criminal conduct may be involved. Significantly, the language is clear and unequivocal. Plaintiff's interest in monitoring the use of that discretion does not form a sufficient basis to derogate the confidentiality of OAE investigative files.

Last, the third prong of a common law right of access is to weigh the citizen's right to access against the State's interest in preventing disclosure. *Keddie, supra,* 148 *N.J.* at 50, 689 *A.*2d 702. Most importantly, in *R.M* the Court recognized the need to protect records compiled by OAE by stating:

Thus, our holding does not alter the requirement that disciplinary authorities continue to be bound by the confidentiality provisions of Rule 1:20–9(a) and (i), all written records compiled by the investigator and the District Ethic Committee received and made pursuant to the investigation are not to be made public by disciplinary officials except as provided by that Rule. The disclosure of sensitive and frequently privileged information is neither required by constitutional principle nor reflective of good policy.

[*R.M., supra,* 185 *N.J.* at 229, n. 3, 883 *A.2d* 369.]

The Court further noted, "[t]he confidentiality rule serves to protect the First Amendment rights of grievants while preserving the disciplinary system's ability to conduct investigations." *Ibid.* Plaintiff has asked this court to conduct an *in camera* review, redact certain information and (1) release the location of the offense(s), if any; (2) the identity of the victims; and (3) the amount of any alleged misappropriations. As noted heretofore, the investigative files contain work product of lawyers and investigators and include recommendations regarding the sufficiency of evidence to proceed. These recommendations fall within the deliberative process privilege and represent a frank exchange of information between investigators and staff affiliated with OAE and Johnson, the one responsible for deciding how to proceed. To release these materials would hinder that free and open exchange and compromise the investigatory process.

The Court has already spoken on the issue of the need for confidentiality of OAE investigative files in its Court Rules and comments thereto. *R.* 1:20–9. In lifting the gag rule previously imposed, the Court did not amend or otherwise disturb *R.* 1:20–9. When, in *R.M.,* it had the opportunity to take a different approach, it expressly chose *not* to do so. The Court instead chose to recommend the issue to a panel of experts and interested parties for further study.

Plaintiff's reliance on *Shuttleworth v. City of Camden,* 258 *N.J.Super.* 573, 610 *A.2d* 903 (App.Div.1992) is misplaced. In *Shuttleworth,* the documents sought concerned the City of Camden's internal investigation into the shooting death of a suspect while in police custody. The estate of the deceased requested documents to establish their negligence and civil rights claims

against the City. This case is very different. The documents in *Shuttleworth* did not involve third party privacy interests, the attorney-client privilege, or the work-product privilege. Here, OAE investigators were required to access confidential attorney-client information in examining the allegations that Gentile misappropriated funds. These concerns were not present in *Shuttleworth*.

Importantly, Gentile's clients, the ethics grievants, agreed to a limited waiver of their confidentiality for purposes of the OAE investigation. Recognizing the sensitive nature of the investigation, the Court enacted *R.* 1:20-9 to exempt investigative records from public disclosure, whether or not an investigation is open or closed, and whether or not an attorney has been disciplined. The Court understood, all too well, that the release of the work product of investigators and attorneys to the general public, including their adversaries, had the potential to severely compromise the process.

Discipline by consent is an effective means of resolving disciplinary matters and allows OAE to better utilize its resources on contested cases. Most importantly, OAE argued and, the court agrees, this process may not be utilized in the future by attorneys if confidential information is made public. Clearly, the Court recognized this fact in *R.M.* by maintaining the confidentially of OAE investigative files. It is not appropriate for this court to second-guess that judgment.

Finally, in February 2006, the Court formed a Committee headed by Justice Albin to "conduct a comprehensive review of the provisions of Rule 1:38, 'Confidentiality of Court Records,' and to recommend any changes to the rule necessary to clarity or facilitate the public's access to Judiciary records." Press Release, Administrative Office of the Courts, Supreme Court Creates Committee on Access to Court Records (February 22, 2006).

OAE has already provided plaintiff the only documents available to the public, namely the Affidavit and the Order. As previously stated in *Nero, supra,* 76 *N.J.* at 226-27, 386 *A.*2d 846, no *in*

*camera* inspection is warranted in a case such as this. In fact, such an inspection would undermine the policy that *Rule* 1:20–9 and the decision in *R.M.* intended to promote, specifically, the policy of preventing the disclosure of sensitive and privileged information. *R.M., supra,* 185 *N.J.* at 229, n. 3, 883 *A.*2d 369.

Accordingly, the motion to dismiss is hereby granted, *R.* 4:6–2(e), and the cross-motion to compel production of a privilege log and for an *in camera* review is denied.