995 A.2d 865 (2010)
413 N.J. Super. 423
FAIR SHARE HOUSING CENTER, INC., Plaintiff-Appellant,
v.
NEW JERSEY STATE LEAGUE OF MUNICIPALITIES, Defendant-Respondent.
DOCKET NO. A-1200-08T3.
Superior Court of New Jersey, Appellate Division.
Argued March 16, 2010.
Decided May 26, 2010.
*866 Kevin D. Walsh, argued the cause for appellant (Fair Share Housing Center, attorneys; Mr. Walsh, on the briefs).
Trishka Waterbury, argued the cause for respondent (Mason, Griffin & Pierson, Princeton, and Kearns, Reale & Kearns, attorneys; Ms. Waterbury, of counsel and on brief; William J. Kearns, Jr., Willingboro, of counsel).
Before Judges SKILLMAN, GILROY and SIMONELLI.
*867 The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
The issue presented by this appeal is whether the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, requires the State League of Municipalities to provide public access to any nonprivileged document generated in the course of the League's operations. We conclude that the League is not subject to OPRA.
Municipalities are authorized by statute to join in an organization of municipalities. N.J.S.A. 40:48-22 provides that "[a]ny municipality. . . may join with any other municipality or municipalities in the formation of an organization of municipalities, for the purpose of securing concerted action in behalf of such measures as the organization shall determine to be in the common interest of the organizing municipalities[.]" See also N.J.S.A. 40:48-23.
However, the League was not formed by statute but rather by action of its original members, who established a nonprofit, unincorporated association and adopted a constitution to govern its operations. The League's objectives, as described in that constitution, include:
(1) The promotion of the general welfare of the municipalities of this State; (2) The improvement of municipal administration in its several branches; (3) The maintenance of a central office to serve as a clearing house of information relating to the functions of municipal government; (4) The fostering of scientific studies of municipal government by educational institutions and the publication and distribution of reports based on such research and study; (5) The publication and circulation of an official League magazine; (6) The study and advocacy of necessary and beneficial legislation affecting municipalities and the opposition of legislation detrimental thereto; (7) The holding of an annual conference and special meeting for the discussion and study of current municipal problems and the techniques involved in their solution and the sponsoring of training courses by the League and State University; (8) The providing of means whereby officials may interchange ideas and experiences and obtain expert advice[.]
In accordance with this statement of objectives, the League pools information and resources for its members, publishes a magazine that reports on a variety of issues affecting municipal government, conducts educational programs for municipal officials, provides legislative analysis and legislative bulletins to its members, and maintains a library of municipal ordinances. The League's officers also testify at legislative hearings on a variety of issues of interest to municipal government and sometimes participate as a party or amicus curiae in litigation affecting municipalities generally.
No municipality is required to join the League. Nevertheless, every municipality in the State is currently a member.
Approximately 16% of the League's revenue is derived from dues assessed upon its members according to population. The rest of its revenue is obtained from a variety of other sources including the League's annual convention.
The issue of the right of public access to documents in the League's possession was spawned by the League's expression of opposition to the revised "Third Round" rules of the Council on Affordable Housing (COAH) relating to the calculation and satisfaction of the need for affordable housing, which COAH proposed following our remand in In re Adoption of N.J.A.C. 5:94 & 5:95 by Council on Affordable *868 Housing, 390 N.J.Super. 1, 914 A.2d 348 (App.Div.), certif. denied, 192 N.J. 71, 72, 926 A.2d 856 (2007). In that opposition, the League asserted that adoption of the proposed rules would result in the imposition of substantial additional tax burdens upon the owners of real property. Plaintiff Fair Share Housing Center, a public interest organization that acts as an advocate for affordable housing policies, sent a letter to the League requesting production of any studies or other documents supporting this assertion as well as any letters or emails relating to the Third Round rules received by the League. Fair Share claimed that the League was required by OPRA and the common law right of access to public records to produce those documents. The League denied Fair Share's request on the ground that it is not subject to either OPRA or the common law right. The League also directed Fair Share to its website, where its public correspondence is posted.
Fair Share then brought this action in the Law Division. Fair Share's complaint claimed that it was entitled to the requested documents under both OPRA and the common law. The case was brought before the court by an order to show cause. Fair Share conducted limited discovery before the return date. The parties agreed that the case presented purely legal issues that could be decided based on the factual materials presented in support of and in opposition to the order to show cause.
The trial court concluded in a lengthy written opinion that the League is not subject to OPRA. In reaching this conclusion, the court stated:
[T]he League is non-profit association organized for the purpose of advancing the interests of local government before the three branches of State government and providing educational and other services to its member municipalities and local government officials. . . . [T]he League does not perform any governmental functions.
. . . .
. . . Instead, the League is similar to a trade association, serving in a lobbying capacity and providing information to its membership on matters affecting the residents of the member municipalities.
The court's opinion did not directly address Fair Share's claim under the common law right of access to public records. However, the court entered an order dismissing Fair Share's complaint in its entirety, including the count asserting the common law right. Therefore, we deem that claim to have been rejected even though not discussed by the court.

I.
Fair Share's argument that OPRA provides a right of public access to documents in the League's possession is based upon the definition of "[p]ublic agency" or "agency" set forth in N.J.S.A. 47:1A-1.1, which determines whether "[a]n entity is subject to OPRA." Times of Trenton Publ'g Corp. v. Lafayette Yard Cmty. Dev. Corp., 183 N.J. 519, 535, 874 A.2d 1064 (2005) (Lafayette Yard). This definition states:
"Public agency" or "agency" means any of the principal departments in the Executive Branch of State Government, and any division, board, bureau, office, commission or other instrumentality within or created by such department; the Legislature of the State and any office, board, bureau or commission within or created by the Legislative Branch; and any independent State authority, commission, instrumentality or agency. The terms also mean any political subdivision of the State or combination of political subdivisions, and *869 any division, board, bureau, office, commission or other instrumentality within or created by a political subdivision of the State or combination of political subdivisions, and any independent authority, commission, instrumentality or agency created by a political subdivision or combination of political subdivisions.

[N.J.S.A. 47:1A-1.1 (emphasis added).]
The first sentence of this definition clearly does not apply to the League because it refers solely to the State Legislature, departments in the Executive Branch of State Government and other State agencies and instrumentalities. Thus, Fair Share's argument relies solely upon the part of the definition of "public agency" contained in the second sentence of N.J.S.A. 47:1A-1.1.
Fair Share's primary argument is that the League is a "combination of political subdivisions" within the intent of the second sentence because it was formed by its member municipalities, which are indisputably political subdivisions. However, to constitute a political subdivision, an entity must provide some governmental service, such as education, police protection, maintenance of roadways, sewage disposal, or urban renewal. See Nw. Austin Mun. Util. Dist. No. One v. Holder, ___ U.S. ___, ___, 129 S.Ct. 2504, 2513, 174 L.Ed.2d 140, 152 (2009) (citing Black's Law Dictionary 1197 (8th ed. 2004)). Consequently, the only reasonable interpretation of "combination of political subdivisions" in N.J.S.A. 47:1A-1.1 is a combination of political subdivisions established to provide a governmental service that otherwise would be provided by a single political subdivision.
We note in this regard that in some circumstances the statutes governing municipal corporations authorize municipalities to provide governmental services in combination with other municipalities by the creation of a separate entity to perform that governmental service. See, e.g., N.J.S.A. 40:14A-4(c) (joint sewerage authority); N.J.S.A. 40:14B-5 (joint municipal utilities authority); N.J.S.A. 40:66A-4(b) (joint municipal incinerator authority); N.J.S.A. 40A:65-14(a) ("joint meeting" of municipalities to provide for "joint operation of any public services, public improvements, works, facilities, or [other public] undertakings"). If such an entity is established, it undoubtedly would generate government records in the course of providing the government service. Therefore, the evident legislative objective in including a "combination of political subdivisions" in the definition of "public agency" or "agency" was to assure that such a governmental entity would be subject to OPRA.
Unlike a governmental entity created by two or more municipalities to provide a governmental service, the League does not provide police protection, maintain roadways, engage in urban renewal projects, or perform any other function that would be recognized as a government service. Instead, the League advises municipal officials and acts as an advocate for municipal governments before the Legislature and in administrative and judicial proceedings. Its role is similar in this respect to a private association such as the Chamber of Commerce. Therefore, even though the League's membership consists of municipalities, this does not make the League a "combination of political subdivisions" within the intent of N.J.S.A. 47:1A-1.1.
Fair Share also argues that the League constitutes an "office . . . or other instrumentality. . . created by a . . . combination of political subdivisions" or an "independent. . . instrumentality or agency created by a . . . combination of political subdivisions" within the intent of the second sentence of N.J.S.A. 47:1A-1.1 (emphasis added). However, for the reasons *870 previously discussed, we conclude that "combination of political subdivisions" refers to an entity created by two or more political subdivisions to provide a service ordinarily provided by a single political subdivision, and the League does not constitute such an entity. Furthermore, within government, the terms "office," "instrumentality," and "agency" are generally understood, like the term "combination of political subdivisions," to refer to an entity that performs a governmental function. See Black's Law Dictionary 1115, 814, 67 (8th ed. 2004); 37A Am.Jur.2d Freedom of Information Acts § 21 (2005) ("The cornerstone of the analysis of whether a private entity operates as the functional equivalent of a governmental agency, such that its records are public records governed by a state public records act, is whether and to what extent the entity performs a governmental or public function.").
If we had any doubt about our conclusion that the terms "combination of political subdivisions," "office," "instrumentality," and "agency" should be given their commonly understood meaning as an entity that performs a governmental service, it would be dispelled by the legislative definition of "government record," which is also contained in N.J.S.A. 47:1A-1.1. The pertinent part of this definition states:
"Government record" or "record" means any paper, written or printed book, document, drawing, map, plan, photograph, microfilm, data processed or image processed document, information stored or maintained electronically or by sound-recording or in a similar device, or any copy thereof, that has been made, maintained or kept on file in the course of his or its official business by any officer, commission, agency or authority of the State or of any political subdivision thereof, including subordinate boards thereof. . . .
[Emphasis added.]
By its plain terms, in addition to State officers and agencies, this definition only applies to "political subdivision[s]" and "subordinate boards thereof." There is no reasonable basis upon which the League could be viewed as a "subordinate board" of a political subdivision. Moreover, the critical term in the main operative sections of OPRA is "government record" rather than "public agency." See, e.g., N.J.S.A. 47:1A-5, -6. Therefore, the restrictive definition of "government record" in N.J.S.A. 47:1A-1.1 is an additional reason for rejecting the expansive interpretation of "public agency" urged by Fair Share.
Our conclusion that the League is not subject to OPRA is consistent with Lafayette Yard, supra, which involved a private nonprofit corporation established to enable the City of Trenton to redevelop a blighted area by construction of a hotel, conference center, and parking facility. 183 N.J. at 522, 874 A.2d 1064. The corporation was structured in the manner required to issue bonds that would be exempt from federal taxation. Id. at 522-23, 874 A.2d 1064. This requirement included an agreement that the corporation's property would revert to Trenton when its indebtedness was retired. Id. at 523, 874 A.2d 1064. In addition, Trenton guaranteed repayment of the corporation's tax-exempt bonds. Id. at 525-26, 874 A.2d 1064. Most significantly, Trenton's governing body was given authority to appoint and remove at least 80% of the corporation's governing board. Id. at 523, 874 A.2d 1064. Under all these circumstances, the Court concluded that the corporation was "an `instrumentality or agency created . . . by a political subdivision' under N.J.S.A. 47:1A-1.1, and that the Corporation is therefore subject to [OPRA]." Id. at 534, 874 A.2d 1064. In rejecting the corporation's *871 argument that "it was not `created' by `a political subdivision of the State'" because it was incorporated by "public-spirited citizens . . . to assist [Trenton] . . . in its redevelopment plan[,]" the Court stated: "Suffice it to say that the Mayor and City Council have absolute control over the membership of the Board of Lafayette Yard and that the Corporation could only have been `created' with their approval." Id. at 535, 874 A.2d 1064.
Unlike the nonprofit corporation involved in Lafayette Yard, which was established and controlled by a municipality to provide a vital public service ordinarily performed directly by the affected municipality the redevelopment of a blighted areawhich made the corporation an "instrumentality" of that municipality, the League does not provide any governmental service ordinarily provided by a municipality or group of municipalities. Instead, as previously discussed, the League's role is purely to advise municipalities and municipal officials and to advocate the positions of its membership before the Legislature, administrative agencies, and the courts. In these capacities, the League is not an "office," "instrumentality," or "agency" of any individual municipality or combination of municipalities.

II.
We turn next to Fair Share's claim of a right of access to documents in the League's possession under the common law right of access to public records.
OPRA preserves "the common law right of access to a government record[.]" N.J.S.A. 47:1A-8. "The common law definition of a public record is broader than the definition [of government record] contained in OPRA." Mason v. City of Hoboken, 196 N.J. 51, 67, 951 A.2d 1017 (2008).
"The common-law right to access public records depends on three requirements: (1) the records must be common-law public documents; (2) the person seeking access must `establish an interest in the subject matter of the material,' and (3) the citizen's right to access `must be balanced against the State's interest in preventing disclosure.'" Keddie v. Rutgers, 148 N.J. 36, 50, 689 A.2d 702 (1997) (citations omitted). For documents to be considered "common law public documents," they must have been "created by, or at the behest of, public officers in the exercise of a public function." Ibid.
For reasons similar to our reasons for concluding that the League is not a "public agency" within the intent of OPRA, we conclude that documents in the League's possession are not "common-law public documents" and therefore there is no common law right of access to those documents. Although there is statutory authorization for municipalities to join the League, it is a nonprofit unincorporated association that is governed by its constitution rather than by statute. Moreover, it does not perform any governmental function. Rather, its role is limited to acting as an advisor to, and advocate for, municipalities and municipal officials. Therefore, the League is not a public agency and its employees are not "public officers" who "exercise . . . a public function" in performing their duties. Ibid.

III.
Fair Share argues under the final point of its brief that the League is subject to the Open Public Meetings Act (OPMA), N.J.S.A. 10:4-6 to -21. However, Fair Share's complaint did not include any claim under OPMA. Although Fair Share filed a reply brief in the trial court that contained a short discussion of the applicability of OPMA to the League, this *872 discussion was solely a response to "the League's contention that an entity must be covered by the OPMA in order to be covered by OPRA." Fair Share did not seek leave to amend its complaint to assert a claim under OPMA, and the conclusion to Fair Share's reply brief only seeks a declaration that the League is subject to OPRA and the common law right of access to public records. Moreover, the trial court did not consider whether the League is subject to OPMA. Therefore, Fair Share's argument that the League is subject to OPMA is not properly before us. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973).
Affirmed.