42 A.3d 910 (2012)
426 N.J. Super. 1
Martin E. O'BOYLE, Plaintiff-Appellant,
v.
BOROUGH OF LONGPORT, and Thomas Hiltner in his capacity as Borough of Longport Clerk and Custodian of Records, Defendants-Respondents.
Docket No. A-2698-10T2
Superior Court of New Jersey, Appellate Division.
Argued November 7, 2011.
Decided May 21, 2012.
*913 Walter M. Luers argued the cause for appellant.
Gene R. Mariano, Mount Laurel, argued the cause for respondents (Parker McCay P.A., attorneys; Mr. Mariano, of counsel; Stacy L. Moore, Jr., on the brief).
Before Judges PARRILLO, ALVAREZ and SKILLMAN.
The opinion of the court was delivered by
ALVAREZ, J.A.D.
Plaintiff Martin E. O'Boyle sought to compel defendants Borough of Longport (Longport) and Longport's Clerk and Custodian of Records, Thomas Hiltner, to produce certain letters and compact discs (CDs) pursuant to the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, and the common law right of access. A judgment was entered on December 20, 2010,[1] dismissing plaintiff's complaint and finding that the items, which consist of litigation materials and correspondence exchanged between outside counsel for Longport and private counsel for a former Planning and Zoning Board member and other persons who had been or were being sued by plaintiff, were not subject to production. This appeal follows. We affirm.
A brief history will place the dispute in context. Over the past several years, plaintiff has sued several Longport officials as well as individuals with connections to Longport's borough governance. This includes Peter Isen, a former Planning and Zoning Board member, and Longport residents Frank and Anthony DiLorenzo. David W. Sufrin, Esquire, represents Isen and the DiLorenzos.
Plaintiff's conflicts with Longport, and some individuals connected with the municipality, began in 2007 when he was cited for a zoning violation. Plaintiff has also filed lawsuits through his corporation, Commerce Group Construction, Inc., and his organization, Citizens for Open Government, LLC, against Frank and Anthony DiLorenzo and Jerome DiPentino. Additionally, plaintiff sued the Press of Atlantic City for defamation resulting from its coverage of these disputes.
Since 2007, plaintiff has been supplied hundreds of documents by Longport, pursuant to OPRA. In fact, he has successfully sued defendants under OPRA, prevailed, and been awarded counsel fees. Longport retained outside counsel, Emanuel Argentieri, Esquire, as to these matters.
On April 23, 2010, plaintiff demanded from Longport the production of certain documents that he learned about by examining Argentieri's legal bills, which in turn he obtained under OPRA. The bills included charges for time spent corresponding with Sufrin. Longport provided some of the items requested, but refused to supply: 1) an August 20, 2009 letter from Argentieri to Sufrin; 2) a September 18, 2009 letter from Sufrin to Argentieri, captioned "Confidential: Joint-Defense Strategy Memorandum-Attorney Joint Defense Work Product not for Disclosure to Third Parties"; 3) a September 29, 2009 letter from Sufrin to Argentieri captioned "CONFIDENTIAL JOINT-DEFENSE Attorney Work Product"; 4) a second September 29, 2009 letter from Sufrin to Argentieri along with two CDs; 5) an undated letter from Sufrin to Argentieri which *914 was reviewed by Argentieri on October 20, 2009; and 6) documents contained on a third CD provided by Sufrin to Argentieri, which Argentieri reviewed on October 14, 2009. Allegedly, one of the CDs contained a list Sufrin compiled of all the lawsuits plaintiff initiated.
Longport refused to supply the items on the basis that the letters were privileged communications, and the CDs were not in its possession, as they had been returned to Sufrin months earlier and were not copied. Plaintiff's verified complaint followed.
After oral argument and an in camera inspection of the letters, the trial judge found they were protected by the attorney-client privilege, and were therefore excluded from the purview of both OPRA and the common law right of access. The court further found that the CDs were not public records, were also subject to the attorney-client privilege, and, since they were not the work product of defendants, disclosure was not mandated in any event. The judge noted that Sufrin was not Longport's agent, and thus questioned whether plaintiff's OPRA demand could effectively require Sufrin, essentially a third party unrelated to Longport, to produce documents. The judge also found that the CDs were returned without any intent to avoid production, as no OPRA request was submitted until after their return. Accordingly, the trial judge dismissed plaintiff's complaint and sealed the documents.
On appeal, plaintiff asserts that the correspondence and the CDs were subject to production under OPRA and the common law right of access, that Isen and Longport share no joint interest such as would protect the items from disclosure under the attorney-client privilege, and that the court should have required a Vaughn Index[2] and conducted an in camera inspection not just of the correspondence, but of the CDs as well. We will first consider the claims made under OPRA, and next under the common law right of access.

I
A trial court's interpretation of a statute, because it is a question of law, is reviewed under a de novo standard. Real v. Radir Wheels, Inc., 198 N.J. 511, 524, 969 A.2d 1069 (2009) (quoting In re Liquidation of Integrity Ins. Co., 193 N.J. 86, 94, 935 A.2d 1184 (2007)). In doing so, we "construe and apply the statute as enacted." Ibid. (quoting Daidone v. Buterick Bulkheading, 191 N.J. 557, 565, 924 A.2d 1193 (2007)). Our analysis "begins with the plain language of the statute." In re Liquidation, supra, 193 N.J. at 94, 935 A.2d 1184 (quoting Daidone, supra, 191 N.J. at 566, 924 A.2d 1193). Findings of fact, however, are reviewed deferentially. Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974).
OPRA requires that "government records ... be readily accessible for inspection, copying, or examination ... with certain exceptions" and that "all government records shall be subject to public access unless exempt from such access...." N.J.S.A. 47:1A-1. "The purpose of OPRA `is to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process.'" Times of Trenton Pub. Corp. v. Lafayette Yard Comm. Dev. Corp., 183 N.J. 519, 535, *915 874 A.2d 1064 (2005) (quoting Asbury Park Press v. Ocean Cnty. Prosecutor's Office, 374 N.J.Super. 312, 329, 864 A. 446 (Law Div.2004)). With that goal in mind, the statute also provides it will not affect "the common law right of access to any record...." N.J.S.A. 47:1A-1; N.J.S.A. 47:1A-8.
OPRA defines government records expansively, as
any paper, written or printed book, document,... information stored or maintained electronically or by sound-recording or in a similar device, or any copy thereof, that has been made, maintained or kept on file in the course of his or its official business by any officer, commission, agency or authority of the State or of any political subdivision thereof, ... or that has been received in the course of his or its official business by any such officer, commission, agency or authority of the State or of any political subdivision thereof....
[N.J.S.A. 47:1A-1.1.]
Even if we assume for the sake of argument that the letters and CDs are government records within the statutory definition, we are also mindful that OPRA does "not abrogate or erode any ... grant of confidentiality heretofore established or recognized by ... court rule ..., which... may ... restrict public access to a ... government record." N.J.S.A. 47:1A-9.[3] Such privileges include work product as defined in Rule 4:10-2(c), which "protect[s] against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation" or materials prepared "in anticipation of litigation...." Protected items can include "documents, electronically stored information, and tangible things ... prepared ... by or for another party...." R. 4:10-2(c); Laporta v. Gloucester Cnty. Bd. of Chosen Freeholders, 340 N.J.Super. 254, 259-60, 774 A.2d 545 (App.Div.2001).
The work product doctrine developed from the self-evident need for attorneys to "work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." Hickman v. Taylor, 329 U.S. 495, 510-11, 67 S.Ct. 385, 393, 91 L.Ed. 451, 462 (1947). In order to compel disclosure, the party seeking to acquire the documents must establish that he is unable to gain access to the information by other means without undue hardship. R. 4:10-2(c); see Hickman, supra, 329 U.S. at 511, 67 S.Ct. at 394, 91 L.Ed. at 462-63. Where such a showing is made, the party seeking disclosure is still not entitled to the "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." R. 4:10-2(c).
Because Longport and its officials, and Sufrin and his clients share a common interest, we conclude that the letters and CDs in this case, prepared in the process of developing a litigation defense strategy against one individual, are items protected by the work product privilege.
The common interest rule is routinely applied in the context of the attorney-client privilege. See In re State Comm'n of Investigation Subpoena No. 5441, 226 N.J.Super. 461, 466-67, 544 A.2d 893 (App.Div.), certif. denied, 113 N.J. 382, 550 A.2d 484 (1988); In re Envtl. Ins. Declaratory Judgment Actions, 259 *916 N.J.Super. 308, 315, 612 A.2d 1338 (App. Div.1992). The common interest rule "protects communications made to a non-party who shares the client's interests." In re State Comm'n, supra, 226 N.J.Super. at 466, 544 A.2d 893. But the protection afforded by the common interest rule also applies in the work product context, including to communications between attorneys for different parties. Laporta, supra, 340 N.J.Super. at 262, 774 A.2d 545.
In order for the common interest rule to apply in such a scenario, it is necessary that "(1) the disclosure is made due to actual or anticipated litigation; (2) for the purposes of furthering a common interest; and (3) the disclosure is made in a manner not inconsistent with maintaining confidentiality against adverse parties." Ibid. (quoting Holland v. Island Creek Corp., 885 F.Supp. 4, 6 (D.D.C. 1995)). The parties need not have identical interests, merely a "common purpose." Ibid. (quoting United States v. McPartlin, 595 F.2d 1321, 1336 (7th Cir.), cert. denied, 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979)).
In Laporta, for example, the Gloucester County Prosecutor's Office refused to turn over to the plaintiff documents claimed to be protected by the work product privilege. Id. at 257, 774 A.2d 545. The plaintiff's employer, county government, had refused to reemploy him after years as a county employee, after he was suspended because of "perceived illegal conduct...." Id. at 263, 774 A.2d 545. The plaintiff had become "the subject of a federal indictment for matters not related to his employment." Id. at 257, 774 A.2d 545. He was ultimately acquitted of the charges and filed suit for wrongful termination and retaliation. Id. at 258, 774 A.2d 545.
The disputed documents included: (1) a ninety-one page statement given by county counsel to county prosecutor's office investigators, with supporting documentation; (2) a "MEMO TO FILELaPorta," written by county counsel and turned over to the prosecutor's office; and (3) a memo authored by the then acting county road supervisor addressed to a county freeholder. Ibid. The prosecutor's office refused to honor the plaintiff's subpoena issued in the wrongful termination case on the theory the documents were privileged. Ibid. We found the documents need not be produced because they were protected by the common interest shared by the government agencies in protecting their work product. Id. at 259, 263, 774 A.2d 545.
County government's purpose was "to bar plaintiff's reinstatement and ancillary remedies...." Id. at 263, 774 A.2d 545. The county prosecutor's purpose was to conduct investigations regarding "alleged criminal activity by persons holding public office" and the prosecution of such individuals "with a view towards barring convicted public officers from employment in that capacity." Ibid. Although the dual interests were not identical, they were sufficiently aligned that the common interest doctrine protected the communications from disclosure in the context of the work product privilege. Id. at 262-63, 774 A.2d 545.
Employing this analysis, we conclude that Sufrin's clients and these defendants also share a common interest. Over a course of years, Sufrin's clients have been sued by plaintiff as a result of their connection to the borough, borough governance, and its elected officials. Longport reasonably anticipated future litigation. The communications between counsel, including the CDs, were generated incidental to pending and anticipated litigation. These materials advanced a common interest, i.e., the defense of litigation spanning several years initiated by plaintiff related to his ongoing conflicts with Longport *917 and individuals associated with the municipality. Thus the letters and CDs are protected by the work product privilege, an exception to OPRA. See N.J.S.A. 47:1A-9.

II
Turning to plaintiff's contention that the common law right of access compels production, we ask initially whether the documents are public records. Drinker Biddle & Reath LLP v. N.J. Dep't of Law and Pub. Safety, 421 N.J.Super. 489, 499, 24 A.3d 829 (App.Div.2011).
Generally, the common law right of access includes a wider range of material than OPRA, Educ. Law Ctr. v. N.J. Dep't of Educ., 198 N.J. 274, 302, 966 A.2d 1054 (2009), although the definition of public record has varied. See, e.g., Keddie, supra, 148 N.J. at 50, 689 A.2d 702; Higg-A-Rella, Inc. v. Essex, 141 N.J. 35, 46, 660 A.2d 1163 (1995); Shuttleworth v. Camden, 258 N.J.Super. 573, 579-80, 610 A.2d 903 (App.Div.), certif. denied, 133 N.J. 429, 627 A.2d 1135 (1992). Our Supreme Court has defined a public record as a "written memorial[ ] ... made by a public officer ... authorized by law to make it." Mason v. Hoboken, 196 N.J. 51, 67, 951 A.2d 1017 (2008) (quoting Nero v. Hyland, 76 N.J. 213, 222, 386 A.2d 846 (1978)). Using this definition, the CDs and letters are not public records because they were not created by a public officer.
A more expansive definition of a public record is found, however, in Keddie v. Rutgers, 148 N.J. 36, 689 A.2d 702 (1997).[4] The Court held that a document is a public record when it was "created by, or at the behest of, public officers in the exercise of a public function." Supra, 148 N.J. at 50, 689 A.2d 702. Nevertheless, under our facts, regardless of which definition we employ, we conclude that the requested items are not available through the common law right of access.
Sufrin's letters and CDs are not public records, as they were not created "at the behest of [] public officers," and all were created for litigation purposes, a private, not public, function. Although Argentieri's letter to Sufrin was arguably at the behest of a public official, it is nevertheless not a public record, as it was authored in anticipation of litigation, rather than in the exercise of a public function. Furthermore, even if, for the sake of argument, we were to consider the outcome if some or all of the documents were public records, the material is still not subject to disclosure.
If a document is a public record, the litigant claiming a right to production must establish an interest in the material. Educ. Law Ctr., supra, 198 N.J. at 302, 966 A.2d 1054. A litigant's interest may be either public or private. Loigman, supra, 102 N.J. at 112, 505 A.2d 958. Once a plaintiff proves an interest, the State must then demonstrate that its need for nondisclosure outweighs the plaintiff's need for disclosure. Educ. Law Ctr., supra, 198 N.J. at 302-03, 966 A.2d 1054.
But when seeking "disclosure of privileged records[,]" Wilson v. Brown, 404 N.J.Super. 557, 583, 962 A.2d 1122 (App.Div.), certif. denied, 198 N.J. 473, 968 A.2d 1189 (2009), including those subject to work product privilege, a plaintiff must show a "particularized need[.]" In determining whether the plaintiff has made this showing, courts analyze "(1) the extent to which the information may be available from other sources; (2) the degree of *918 harm that the litigant will suffer from its unavailability; and (3) the possible prejudice to the [public officer]." Paff v. Dir. of Attorney Ethics, 399 N.J.Super. 632, 649, 945 A.2d 149 (Law Div.2007) (quoting McClain v. College Hosp., 99 N.J. 346, 351, 492 A.2d 991 (1985)).
In this case, we conclude plaintiff cannot show a particularized need sufficient to establish an interest which compels disclosure. Other than the self-evident wish to prevail in his lawsuits over Isen, the DiLorenzos, and Longport, no need whatsoever has been demonstrated. Since he cannot prove that the materials are not available through other means, he cannot prove any harm resulting from nondisclosure. Hence the work product privilege applies and the material need not be produced.
Finally, plaintiff asserts that the CDs should have, at a minimum, been examined in camera. But the CDs were not copied, were never in the hands of Longport, were not created at Longport's direction, and their contents do not relate to any interest either of Longport or its citizens.
In furtherance of his argument that the CDs should have been examined in camera, plaintiff relies solely on Burnett v. County of Gloucester, 415 N.J.Super. 506, 2 A.3d 1110 (App.Div.2010). In Burnett, we held that the Board of County Freeholders was required to produce various settlement agreements entered into by the county even if the agreements were solely in the possession of counsel and not the Board. Id. at 516, 2 A.3d 1110. The thrust of Burnett, however, was not that the production of documents claimed to be public records can be compelled even if they are exclusively in the possession of counsel, and were never in the control of the government agency. Rather, Burnett holds that documents accessible to the public which are generated on behalf of a public agency in the course of its official business are subject to disclosure no matter where they are located, even if they were never in the possession of the governmental entity. Id. at 517, 2 A.3d 1110. The rationale behind the decision is compellingthat government should not be able to shield its transactions from public scrutiny by the expedient of entrusting sole possession of relevant documents to third parties. Ibid.
This scenario is quite different. The CDs were created by Sufrin, not at the request of Longport or Argentieri. They were promptly returned to Sufrin, at his insistence, not at the instruction of Longport or even its attorney. The controlling hand in this situation was that of counsel for a third party not named in this lawsuit, not a governmental agency. Hence Burnett does not compel disclosure either under OPRA or the common law right of access.
Because all the items at issue are protected attorney work product, we do not reach plaintiff's additional arguments, including that defendants' failure to file an answer or sworn affidavits was a fatal procedural defect. The questions we consider are purely legal and the record sufficient for the requisite analysis.
Affirmed.
NOTES
[1] Earlier, a final judgment denying plaintiff's request for production was entered on August 20, 2010. Plaintiff thereafter sought to disqualify the judge, who recused himself, vacated his order, and transferred the matter to a second judge. It is the second judge's order that is the subject of this appeal.
[2] When an OPRA demand is made, a Vaughn Index allows "a court to analyze, without exhaustive review, the essence of the documents and to determine whether they shall be disclosed." Atl. City Convention Ctr. Auth. v. S. Jersey Publ. Co., 135 N.J. 53, 68, 637 A.2d 1261 (1994) (citing Loigman v. Kimmelman, 102 N.J. 98, 109, 505 A.2d 958 (1986)).
[3] It is undisputed that a public body is generally entitled to protection of the confidentiality of its communications with its attorney in litigation matters. Tractenberg v. Twp. of W. Orange, 416 N.J.Super. 354, 376, 4 A.3d 585 (App.Div.2010) (citing Matter of Grand Jury Subpoenas, 241 N.J.Super. 18, 28-29, 574 A.2d 449 (App.Div. 1989)).
[4] Recently applied in Fair Share Housing Center, Inc. v. New Jersey State League of Municipalities, 413 N.J.Super. 423, 433, 995 A.2d 865 (App.Div.2010), reversed on other grounds, 207 N.J. 489, 25 A.3d 1063 (2011).