2 A.3d 1110 (2010)
415 N.J. Super. 506
David B. BURNETT, Plaintiff-Appellant,
v.
COUNTY OF GLOUCESTER, Defendant-Respondent.
No. A-4329-08T3.
Superior Court of New Jersey, Appellate Division.
Argued January 21, 2010.
Decided May 10, 2010.
Mark Cimino, argued the cause for appellant.
Anthony J. Fiola, Assistant County Counsel, argued the cause for respondent *1111 (Samuel J. Leone, Gloucester County Counsel, attorney; Mr. Fiola, on the brief).
Bobby Conner, argued the cause for amici curiae American Civil Liberties Union of New Jersey and North Jersey Media Group Inc. (Edward Barocas, Jeanne LoCicero and Bobby Conner, for American Civil Liberties Union of New Jersey; Jennifer A. Borg, Hackensack, for North Jersey Media Group; Mr. Conner, on the brief).
Before Judges PAYNE, MINIMAN and WAUGH.
The opinion of the court was delivered by
PAYNE, J.A.D.
Plaintiff, David B. Burnett, appeals from an order of summary judgment entered against him in his suit to compel production by the County of Gloucester of documents requested pursuant to the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, consisting of "[a]ny and all settlements, releases or similar documents entered into, approved or accepted from 1/1/2006 to present." His appeal raises three issues: (1) whether settlements executed by third parties on behalf of a governmental entity constitute government records as defined by OPRA; (2) whether a request for "settlement agreements" without specification of the matters to which they pertain constitutes a request for information obtained through research, as to which OPRA is inapplicable, or constitutes a request for a specific document, triggering OPRA's disclosure requirements; and (3) whether the County was excused from its OPRA obligations because the requested documents were not in its possession. Following the filing of this appeal, we granted leave to the American Civil Liberties Union of New Jersey and the North Jersey Media Group Inc. to participate as amici curiae. Having considered the facts of the matter, relevant statutory enactments, precedent, and the arguments of counsel, we now reverse and remand the matter to the trial court for further proceedings.

I.
We preface our opinion by a brief recitation of the history of this matter. The request at issue was one of three submitted by attorney Mark Cimino, on March 14, 2008, to the Clerk of the Gloucester County Board of Chosen Freeholders. The other two requests sought "[a]ny and all meeting minutes of the freeholder board whether open, closed or otherwise from 1/1/2008 to the present" and "[a]ny and all Open Public Records Request Forms or similar documents submitted from 1/1/2006 to present." Compliance with the latter two requests has not been challenged.
According to the certification of Robert N. DiLella, the Clerk of the Gloucester County Board of Chosen Freeholders and the person designated to administer OPRA requests, Gloucester County does not maintain a central list of settlements. Documents providing evidence of such actions may be in the hands of the County's insurance broker, the Dalton Agency, one of the County's insurers, or outside counsel. Inho Yuh, an employee of the Dalton Agency, has certified that, on March 18, 2008, County Counsel requested him to identify cases that met the criteria of the request. At the time, the County was insured for various risks by five carriers. Yuh was able to access loss runs containing information that would lead to the identification of the relevant documents for the Travelers Insurance Company from his own computer, and he supplied that information to the County. He requested such runs from the remaining carriers, receiving *1112 their responses and relaying them to the County in the period between March 25, 2008 and April 1, 2008.
On March 25, 2008, Debra Press-Costello, the Deputy Clerk of the Board of Chosen Freeholders, wrote to Cimino advising that "relative to your OPRA request for settlement information, be advised we will need an extension of the statutory seven days. We anticipate having this ready on 02 April 2008." On March 26, 2008, Press-Costello telefaxed a letter to Cimino that stated:
Regarding one of your recent Open Public Records Act request[s], I am writing to request some clarification. You have asked for "any and all settlements, releases or similar documents." For purposes of clarification would you please indicate if your request is meant to include:
1. Closing documents for the payment of small claims matters (ex. A claim for damage to a mailbox by a county road vehicle).
2. Workers compensation claims
3. Closing documents where the case was dismissed or otherwise decided in favor of the county as opposed to the county being obligated to pay any money to any claimant.
Cimino responded by letter of March 26, 2008 stating:
As to your correspondence of March 26, 2008, requesting a limitation of the requests otherwise characterized as a "clarification," no limitation of the prior outstanding request is being sought. Thus, please provide all information sought.
On April 3, 2008, Cimino requested advice as to the copying costs for the outstanding OPRA requests. Press-Costello responded with the costs for the 2008 minutes, and stated with respect to settlement information: "I anticipate having that data this afternoon and will email you with the cost for copies of that later today." On April 4, 2008, Press-Costello advised Cimino: "The County is delivering in response to your request the settlement or release documents which have been retrieved. If any additional documents in the same category are available from storage, they can be provided as well." Press-Costello also informed Cimino that the County was providing a schedule of claims concluded during the relevant period by Travelers Insurance Company that were not the subject of lawsuits and were adjusted directly by Travelers. She denied Cimino's request for settlements and releases in workers' compensation cases as unavailable for public accessa position that has not been contested.
On April 7, 2008, Cimino responded: "We never indicated our intent to limit our request to whether the information was in `storage' or not. In accordance with your letter dated April 4, 2008, please provide `any additional documents in the same category. . . available from storage.'" The following day, Press-Costello responded that: "The reference to `in storage' was meant to inform you that while we are providing to you at this time all the documents that fall within the category of your request and which we have been able to retrieve, we will continue to search closed files to determine if any other documents fall within the category of your request. We expect to have that search completed by April 11 and will advise you if any additional documents have been retrieved from storage."
On April 18, 2008, Press-Costello advised Cimino that the information requested pursuant to OPRA was ready for his review and pick-up. Cimino responded on Saturday, April 19, "What about the information *1113 `in storage'?" On April 24, Press-Costello replied:
Some of the documents which fall into the categories of your request are actually retained by the County Insurance Broker or Insurance carrier assigned legal counsel, of which I referred to in an earlier email as being "in storage." These documents are being retrieved from those sources. As available, they will be made accessible to you.
Cimino did not pick up or review any of the documents assembled by the County, but instead, filed suit on June 4, 2008. In response to discovery requests in the matter, the County produced evidence of seven settlements, six of which were available to it on April 7, 2008 and one on April 11, 2008. Through access to computerized databases maintained by the state and federal courts, Cimino has located one additional settlement that was not produced by the County in the amount of $17,500 arising from an automobile/motorcycle accident.
Following a period for discovery, cross-motions for summary judgment were filed in the matter. In an oral opinion delivered on March 27, 2009, the motion judge concluded that Cimino's request for a specific type of document, without specifying the case to which it pertained, was not too broad and compliance with that request fell within the required work of the government entity. However, the judge held further that OPRA applies solely to documents made, maintained and kept on file in the course of a public agency's official business and to documents received in the course of the agency's business. In this case, the judge found, the requested documents were not in the custodian's possession, and the Clerk had no obligation to seek them from sources beyond the County's files. Although the County made an effort to obtain the information that Cimino sought, it was not required to do so. Thus, the fact that one or possibly two settlements were missed in the County's search did not result in a denial of access pursuant to OPRA.

II.
We recently described OPRA in the following terms:
OPRA superseded the Right to Know Law. Its purpose is "to maximize public knowledge about public affairs in order to ensure an informed citizenry." Mason v. City of Hoboken, 196 N.J. 51, 64, 951 A.2d 1017 (2008) (quoting Asbury Park Press v. Ocean County Prosecutor's Office, 374 N.J.Super. 312, 329, 864 A.2d 446 (Law Div.2004)). OPRA requires that all government records be disclosed upon request except those exempted by statute, legislative resolution, administrative regulation, executive order, rules of court, judicial decisions, or federal law. N.J.S.A. 47:1A-1, -9.
In the opening words of OPRA, the Legislature explicitly stated its intent favoring disclosure:
The Legislature finds and declares it to be the public policy of this State that:
government records shall be readily accessible for inspection, copying, or examination by citizens of this State, with certain exceptions, for the protection of the public interest, and any limitation on the right of access accorded by [OPRA] shall be construed in favor of the public's right of access;. . .
[N.J.S.A. 47:1A-1.]
The statute also declares that it should not "be construed as affecting in any way the common law right of access to any record." N.J.S.A. 47:1A-1; see N.J.S.A. 47:1A-8.

*1114 OPRA defines "government record" broadly to include all documents and similar materials, and all information and data, including electronically stored data, that have been made or received by government in its official business. From this broad definition, the statute provides an exception for "inter-agency or intra-agency advisory, consultative, or deliberative material," and it lists descriptive categories of information that are expressly excluded from that broad meaning of "government record." N.J.S.A. 47:1A-1.1. As further expansion of the public's right of access, OPRA places the burden of proof on the government to show that a requested record may be withheld under an exemption or exclusion from the disclosure requirement. N.J.S.A. 47:1A-6.
[Asbury Park Press v. Monmouth County, 406 N.J.Super. 1, 7, 966 A.2d 75 (App.Div.2009) (footnote omitted), aff'd o.b., 201 N.J. 5, 986 A.2d 678 (2010).]
We have no hesitation in concluding that agreements settling claims between claimants and governmental entities such as Gloucester County constitute government records, made in the course of the official business of the County. Indeed, in Asbury Park Press, we assumed that to be the case, focusing our analysis on the narrower issue of whether a confidentiality provision in the settlement at issue excepted the settlement from disclosure pursuant to an OPRA request, and concluding that it did not. While those agreements may on occasion be executed by agents of the County, consisting of outside attorneys or insurance adjusters, they nonetheless bind the county as principal, and the agreements are made on its behalf. We have previously recognized that
[n]egotiations of an attorney are not binding on the client unless the client has expressly authorized the settlement or the client's voluntary act has placed the attorney in a situation wherein a person of ordinary prudence would be justified in presuming that the attorney had authority to enter into a settlement, not just negotiations, on behalf of the client.
[Amatuzzo v. Kozmiuk, 305 N.J.Super. 469, 475, 703 A.2d 9 (App.Div.1997) (citing United States Plywood Corp. v. Neidlinger, 41 N.J. 66, 74, 194 A.2d 730 (1963)).]
Indeed, "New Jersey law recognizes two types of authority to settle a lawsuit which would bind its client: actual, either express or implied, and apparent authority." Newark Branch, NAACP v. West Orange, 786 F.Supp. 408, 423 (D.N.J.1992) (citing Smith v. Delaware Valley Auto Spring Co., 642 F.Supp. 1112, 1115 (E.D.Pa.1986)).
Here, we find that for the purpose of settling claims, there is no colorable issue of agency, and therefore no question that the settlements entered into by counsel bound the County as principal. This authority existed despite such counsel being retained and provided by the County's insurers. To that end, the Supreme Court has confirmed that the tripartite relation of the insurer, insured, and retained counsel "is the same as if the attorney were hired and paid directly by the insured." Lieberman v. Employers Ins. of Wausau, 84 N.J. 325, 338, 419 A.2d 417 (1980). "The loyalty to the insured may actually [even] be paramount since that defense is the sole reason for the attorney's representation." Ibid. (brackets in original).
Further, we are in agreement with the motion judge's conclusion that the fact that Cimino requested settlement agreements and releases without specifying the matters to which the settlements pertained did not render his request a general request for information obtained through *1115 research, rather than a request for a specific record. In that regard, we have held:
Under OPRA, agencies are required to disclose only "identifiable" governmental records not otherwise exempt. Wholesale requests for general information to be analyzed, collated and compiled by the responding government entity are not encompassed therein. In short, OPRA does not countenance open-ended searches of an agency's files.
[MAG Entertainment, LLC v. Div. of Alcoholic Beverage Control, 375 N.J.Super. 534, 549, 868 A.2d 1067 (App.Div. 2005).]
In MAG, we considered the OPRA request of a plenary retail liquor license holder facing revocation for serving alcohol to an intoxicated patron who was then involved in a fatal car accident and for acts of alleged lewdness by female dancers. The request, made to support a claim of selective enforcement, sought "all documents or records evidencing that the ABC sought, obtained or ordered revocation of a liquor license for the charge of selling alcoholic beverages to an intoxicated person in which such person, after leaving the licensed premises, was involved in a fatal auto accident" and "all documents or records evidencing that the ABC sought, obtained or ordered suspension of a liquor license exceeding 45 days for charges of lewd or immoral activity." Id. at 539-40, 868 A.2d 1067. In reversing a trial court order granting MAG's OPRA request, we held:
the request failed to identify with any specificity or particularity the governmental records sought. MAG provided neither names nor any identifiers other than a broad generic description of a brand or type of case prosecuted by the agency in the past. Such an open-ended demand required the Division's records custodian to manually search through all of the agency's files, analyze, compile and collate the information contained therein, and identify for MAG the cases relative to its selective enforcement defense in the OAL litigation. Further, once the cases were identified, the records custodian would then be required to evaluate, sort out, and determine the documents to be produced and those otherwise exempted. Simply put, the Division was asked to do the very research and investigation MAG needed to do in the administrative proceeding in order to establish a "colorable claim" of selective enforcement before being entitled to pre-trial discovery as to its defense in that forum.
[Id. at 549-50, 868 A.2d 1067.]
In the course of our opinion in MAG, we noted that "the Government Records Council, the administrative body charged with adjudicating OPRA disputes, N.J.S.A. 47:1A-6, has explained that `OPRA does not require record custodians to conduct research among its records for a requestor and correlate data from various government records in the custodian's possession.'" Id. at 546-47, 868 A.2d 1067 (quoting Reda v. Tp. of West Milford, GRC 2002-58, final decision (January 17, 2003)[1]). We noted further that in Reda, the requestor had sought information regarding municipal liability settlements, but had not requested any specific record, and that the request had been denied on the ground that it is "`incumbent on the requestor to perform any correlations and analysis he may desire.'" MAG, supra, 375 N.J.Super. at 547, 868 A.2d 1067 (quoting Reda).[2] *1116 As the Government Records Council has explained in an opinion finding an OPRA violation by the Township of Union in failing to fulfill a request for "[a]ll motor vehicle accident reports for the period of September 5, 2005 through September 15, 2005,"
Pursuant to [MAG], the custodian is obligated to search her files to find the identifiable government records listed in the Complainant's OPRA request. . . . However, the Custodian is not required to research her files to figure out which records, if any, might be responsive to a broad or unclear OPRA request. The word search is defined as "to go or look through carefully in order to find something missing or lost.["] The word research, on the other hand, means "a close and careful study to find new facts or information."
[Donato v. Twp. of Union, GRC 2005-182, interim order (January 31, 2007).[3]]
Here, it is the documents, themselves, that have been requested, and their retrieval requires a search, not research.
As a final matter, we disagree with the motion judge's conclusion that the Board was excused from its obligation to produce documents pursuant to a valid OPRA request because the documents were not in the Board's possession. In support of his conclusion, the judge relied on Bent v. Township of Stafford Police Department, 381 N.J.Super. 30, 884 A.2d 240 (App.Div.2005), an opinion in which we affirmed a final decision of the Government Records Council dismissing complainant's case. We conclude that the motion judge interpreted Bent too broadly.
In Bent, the requestor sought records and information regarding a criminal investigation of his credit card activities conducted jointly by the Stafford Township Police Department (STPD), the United States Attorney for New Jersey and a special agent of the Internal Revenue Service. As part of his request, Bent sought "discrete records of the 1992 criminal investigation conducted by the STPD," which were fully disclosed. Id. at 38, 884 A.2d 240. Additionally, he sought a "[c]opy of contact memos, chain of custody for items removed or turned over to third parties of signed Grand Jury reports and recommendations." Bent v. Stafford Twp. Police Dept., GRC 2004-78, final decision (October 14, 2004).[4] Affirming the determination of the Government Records Council, we stated: "to the extent Bent's request was for records that either did not exist or were not in the custodian's possession, there was, of necessity, no denial of access at all." Bent, supra, 381 N.J.Super. at 38, 884 A.2d 240. We continued by stating:
Of course, even if the requested documents did exist, the custodian was under no obligation to search for them beyond the township's files. OPRA applies solely to documents "made, maintained or kept on file in the course of [a public agency's] official business," as well as any document "received in the course of *1117 [the agency's] official business." N.J.S.A. 47:1A-1.1. Contrary to Bent's assertion, although OPRA mandates that "all government records . . . be subject to public access unless exempt," the statute itself neither specifies nor directs the type of record that is to be "made, maintained or kept on file." In fact, in interpreting OPRA's predecessor statute, the Right to Know Law, we found no requirement in the law concerning "the making, maintaining or keeping on file the results of an investigation by a law enforcement official or agency into the alleged commission of a criminal offense." . . . Thus, even if the requested documents did exist in the files of outside agencies, Bent has made no showing that they were, by law, required to be "made, maintained or kept on file" by the custodian so as to justify any relief or remedy under OPRA. N.J.S.A. 47:1A-1.1.
[Id. at 38-39, 884 A.2d 240 (citations omitted).]
We find the circumstances presented in Bent to be far removed from those existing in the present matter because, as we have previously concluded, the settlement agreements at issue here were "made" by or on behalf of the Board in the course of its official business. Were we to conclude otherwise, a governmental agency seeking to protect its records from scrutiny could simply delegate their creation to third parties or relinquish possession to such parties, thereby thwarting the policy of transparency that underlies OPRA. N.J.S.A. 47:1A-1. We find the public interest in settlements to be a significant one, since such settlements may provide valuable information regarding the conduct of governmental officials and the condition of government property. We reject any narrowing legal position in this matter that would provide grounds for impeding access to such documents.
We note that, because the motion judge found that the County had no obligation to search records that were not in its possession and that it acted as a volunteer in doing so, the judge did not reach any issues concerning the adequacy of the County's search, the timing of its document production, or the effect of its failure to locate all documents that were requested. Accordingly the matter is remanded for consideration of those issues and any others that may remain.
Reversed and remanded.
NOTES
[1] http://www.state.nj.us/grc/decisions/2002-58.html#final
[2] The Reda opinion states:

The requestor initially sought the annual costs of liability settlements by the Township for each of the past five years, including costs for "legal defense of said items." Subsequently, the requestor stated that he was seeking data pertaining to any settlement based upon a claim of "action taken or . . . specific failure to act." Ultimately, the requestor further modified his request on September 19, 2002 to seek "every liability settlement by the township, by item and year, for each of the last five years" including "the costs incurred to the Township or its liability provider for the legal defense of same."
[Reda, supra, GRC 2002-58.]
[3] http://www.state.nj.us/grc/decisions/pdf/ Donato%20v.%20Union,%XXXXXX-XXX
[4] http://www.state.nj.us/grc/decisions/2004-78.html