**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0483-18T1

JEFF CARTER,

     Petitioner-Appellant,

v.

NEW JERSEY DEPARTMENT
OF COMMUNITY AFFAIRS,
DIVISION OF LOCAL
GOVERNMENT SERVICES
CUSTODIAL AGENCY,

     Defendant-Respondent.

_____

> Argued November 4, 2019 – Decided December 10, 2019
>
> Before Judges Fasciale and Moynihan.
>
> On appeal from the New Jersey Department of Community Affairs, Government Records Council, GRC Complaint No. 2016-262.
>
> Jeff Carter, Ph.D., appellant, argued the cause pro se.
>
> Steven Michael Gleeson, Deputy Attorney General, argued the cause for respondent New Jersey Department of Community Affairs, Division of Local Government Services (Gurbir S. Grewal, Attorney

General, attorney; Raymond R. Chance, III, Assistant Attorney General, of counsel; Steven Michael Gleeson, on the brief).

Debra A. Allen, Deputy Attorney General, argued the cause for respondent Government Records Council (Gurbir S. Grewal, Attorney General, attorney; Jane C. Schuster, Assistant Attorney General, of counsel; Debra A. Allen, on the brief).

PER CURIAM

Jeff Carter appeals from an August 28, 2018 final agency decision by the Government Records Council (GRC) declaring that Carter's request for records under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 through -13, was invalid as overly broad. The Division of Local Government Services (the Division) therefore did not exhaustively research or search for documents. We affirm.

On August 9, 2016, Carter submitted his OPRA request seeking "complete copies of any and all 'Notice of Docketing' records issued by the New Jersey Superior Court, Appellate Division, resulting from an appeal (pursuant to N.J.S.A. 40A:9-22.9[1]) of any final [agency] decision of the Local Finance Board [(LFB)] from August 9, 2011 through August 9, 2016." The custodian

---

[1] N.J.S.A. 40A:9-22.9 permits final agency decisions pertaining to the New Jersey Local Government Ethics Law, N.J.S.A. 40A:9-22.1 to -22.25, to be appealed to the Appellate Division.

responded on August 16, 2016, stating that "[t]he government records sought are not records that are maintained by the [Division]. Therefore, we have no government records that are responsive to your request." On August 18, 2016, the custodian responded to Carter's request for clarification.

> [The Division] and the Division of Law's databases do not organize or list matters based on the description of the record sought. Since [Carter] [has] not provided any identifiers such as a case name, party name, or docket number, the custodian would need to manually identify matters, locate records in storage through communication with the Division of Law, obtain those records, and review the entire case file for each potentially applicable case file to identify and compile responsive records. Such an exercise would require the custodian to exercise judgment and conduct research which is beyond the ambit of OPRA.

Carter then filed a Denial of Access Complaint with the GRC, and the Division filed a Statement of Information (SOI) with the GRC, explaining that it refused the request because the records were not made, maintained, or received by the Division, and therefore could not be identified without significant research by the records custodian.

Carter rebutted the SOI, requested a summary and expedited adjudication, and petitioned the GRC for a "contested case" determination, pursuant to N.J.A.C. 1:1-4.1(a). Carter renewed his request seven more times through a series of briefs filed with the GRC, and repeatedly petitioned the GRC for a

3

"contested case" determination.[2]  The GRC then issued its final agency decision stating:

> [Carter's] request seeking [n]otices for a five . . . year period alleging a violation of N.J.S.A. 40A:9-22.9 is invalid because it required research.  The [c]ustodian had no legal duty to research her files, or cause research, to locate records potentially responsive to the request.
>                   . . . .
>
> [N]o factual causal nexus exists between [Carter's] filing of a Denial of Access Complaint and the relief ultimately achieved. . . . Carter's request was invalid and no responsive records existed.

On appeal, Carter argues:

POINT I
CARTER'S OPRA REQUEST IS VALID.

    A.  The OPRA Request Contains More Than Enough Qualifiers.

    B.  <u>Burke</u> Controls Here.

    C.  <u>Burnett</u> And <u>O'Boyle</u> Control Here.

    D.  <u>Scheeler v. Gov.</u> And <u>Wronko</u> Also Control Here.

POINT II
THE GRC ERRED BY ERRONEOUSLY CONFLATING THE OPRA REQUEST'S PARENTHETICAL ELEMENT TO MEAN APPEALS

---

[2]  Carter filed approximately seven briefs between January 2017 and May 2018.

RELATING TO "QUORUM VIOLATIONS," BECAUSE THE WORD "QUORUM" NEVER APPEARS IN THE OPRA REQUEST, NOR IN THE REQUEST FOR CLARIFICATION.

    A. The GRC Erred By Misstating Facts In The Record.

POINT III
THE CUSTODIAN CANNOT CLAIM IGNORANCE IN CLAIMING THAT THE REQUEST WAS OVERBROAD BASED ON HER EXTENSIVE LEGAL CITATIONS IN HER CLARIFICATION.

POINT IV
[RESPONDENTS] REFUSED TO COMPROMISE PURSUANT TO MASON, AND THE GRC NEVER ADDRESSED THEIR FAILURE TO DO SO.

POINT V
THE CUSTODIAN HAD NO PERSONAL KNOWLEDGE OF THE SEARCH FOR RECORDS; THUS, HER CERTIFICATION WAS INSUFFICIENT.

POINT VI
CARTER NEVER SAID THAT HE POSSESSED BHALLA'S NOTICE OF DOCKETING RECORD; THUS, THE GRC ERRED IN FAILING TO ORDER ITS DISCLOSURE BECAUSE IT WAS SPECIFICALLY IDENTIFIED AS BEING RESPONSIVE.

POINT VII
THE GRC'S FAILURE TO ANSWER CARTER'S WRITTEN PETITIONS FOR A "CONTESTED CASE" DETERMINATION WITHIN THIRTY DAYS

VIOLATED HIS RIGHT TO PROCEDURAL DUE PROCESS OF LAW.

A. Carter Could Not Seek Interlocutory Review.

B. Carter's Efforts To Prosecute His Appeal In IMO FTEB Were Stymied By The GRC's Failure To Adjudicate His Complaint In A Summary, Expedited, And/Or Expeditious Manner.

C. The GRC Acted In Bad Faith By Holding That It Handles Complaints In The Order They Are Received, Because The Public Record Eviscerates This Erroneous Holding.

POINT VIII
THE GRC IS COMPELLED TO HEED OPRA'S SUMMARY/EXPEDITED ADJUDICATION PROVISIONS; THUS, COURTS MUST ASCRIBE MEANING TO THE LEGISLATURE'S CHOSEN WORDS.

A. N.J.S.A. 47:1A-6 And -7(e) Must Be Harmonized.

B. The GRC Failed To Heed And Execute The Mandatory Imperative In The Law[']s Use Of The Word "Shall," Which Is An Imperative The GRC Previously Held It Is Familiar With.

POINT IX
THE GRC'S INTERPRETATION OF JUDICIAL PRECEDENT IS DUE NO DEFERENCE; THE GRC IS CONSTRAINED TO FOLLOW JUDICIAL

A-0483-18T1

PRECEDENT INTERPRETING OPRA, BUT IGNORED SAME.

    A. This Court Is Not Bound By The GRC's Erroneous Legal Opinions; Thus, The GRC Is Due No Deference.

POINT X
REVIEW OF THIS GRC MATTER IS DE NOVO.

POINT XI
CARTER IS ENTITLED TO REASONABLE ATTORNEYS' FEES FOR THE LEGAL WORK PERFORMED BELOW IF HE PREVAILS ON APPEAL.[3]

Our review of the GRC's decision "is governed by the same standards as review of a decision by any other state agency," Fisher v. Div. of Law, 400 N.J. Super. 61, 70 (App. Div. 2008), and is therefore limited. In re Stallworth, 208 N.J. 182, 194 (2011). This court "will not overturn an agency's decision unless it violates express or implied legislative policies, is based on factual findings that are not supported by substantial credible evidence, or is arbitrary, capricious or unreasonable." Fisher, 400 N.J. Super. at 70. This court's standard of review is "plenary with respect to" the GRC's interpretation of OPRA. Asbury Park Press v. Cty. of Monmouth, 406 N.J. Super. 1, 6 (App. Div. 2009).

---

[3] We also considered the supplemental letter, pursuant to Rule 2:6-11(d), submitted by defendant on November 6, 2019.

A-0483-18T1

"[D]eterminations about the applicability of OPRA and its exemptions are legal conclusions . . . and are therefore subject to de novo review." Carter v. Doe (In re N.J. Firemen's Ass'n Obligation), 230 N.J. 258, 273-74 (2017) (citations omitted). But under this "deferential standard of review, [this court] give[s] weight to the GRC's interpretation of OPRA." McGee v. Twp. of E. Amwell, 416 N.J. Super. 602, 616 (App. Div. 2010). We do not, however, "simply rubber stamp the agency's decision." Bart v. City of Paterson Hous. Auth., 403 N.J. Super. 609, 618 (App. Div. 2008) (citations omitted).

The law on OPRA is settled. "Any analysis of OPRA must begin with the recognition that the Legislature created OPRA intending to make government records 'readily accessible' to the state's citizens 'with certain exceptions[] for the protection of the public interest.'" Gilleran v. Twp. of Bloomfield, 227 N.J. 159, 170 (2016) (alteration in original) (quoting N.J.S.A. 47:1A-1); see also Mason v. City of Hoboken, 196 N.J. 51, 65 (2008). Thus, OPRA establishes "a comprehensive framework for access to public records." Mason, 196 N.J. at 57. OPRA requires, among other things, prompt disclosure of records, and it provides different procedures to challenge a custodian's decision denying access. Ibid.

A-0483-18T1

OPRA does not "'authorize a party to make a blanket request for every document' a public agency has on file. . . . Rather, a party requesting access to a public record under OPRA must specifically describe the document sought." Bent v. Twp. of Stafford Police Dep't, 381 N.J. Super. 30, 37 (App. Div. 2005) (quoting Gannett N.J. Partners, LP v. Cty. of Middlesex, 379 N.J. Super. 205, 219 (App. Div. 2005)). "While OPRA provides [a] . . . means of access to government documents not otherwise exempted from its reach, it is not intended as a research tool litigants may use to force government officials to identify and siphon useful information." MAG Entm't, LLC v. Div. of Alcoholic Beverage Control, 375 N.J. Super. 534, 546 (App. Div. 2005).

Blanket requests for unspecified documents are not proper under OPRA. The request "must identify with reasonable clarity those documents that are desired, and a party cannot satisfy this requirement by simply requesting all of an agency's documents." Bent, 381 N.J. Super. at 37. "OPRA does not authorize unbridled searches of an agency's property," ibid., that "would substantially disrupt agency operations," N.J.S.A. 47:1A-5(g). "[T]he custodian may deny . . . [a request] after attempting to reach a reasonable solution . . . that accommodates the interests of the requestor and the agency." Ibid. A proper OPRA request must state "a specific subject matter that [is] clearly and

reasonably described with sufficient identifying information[.]" <u>Burke v.</u> <u>Brandes</u>, 429 N.J. Super. 169, 176 (App. Div. 2012).

As the GRC has pointed out, "[a] valid OPRA request requires a search, not research." <u>Verry v. Borough of S. Bound Brook (Somerset)</u>, GRC Complaint Nos. 2013-43 and 2013-53, interim order (dated Sept. 24, 2013). The GRC explained in an opinion—finding an OPRA violation committed by the Township of Union for failing to fulfill a request for "[a]ll motor vehicle accident reports" for a ten-day period—that:

> Pursuant to [MAG], the custodian is obligated to <u>search</u> her files to <u>find</u> the identifiable government records listed in the Complainant's OPRA request. . . . However, the [c]ustodian is not required to <u>research</u> her files to figure out which records, if any, might be responsive to a broad or unclear OPRA request. The word <u>search</u> is defined as to go or look through carefully in order to find something missing or lost. The word research, on the other hand, means a close and careful study to find new facts or information.
>
> [<u>Burnett v. Cty. of Gloucester</u>, 415 N.J. Super. 506, 515 (App. Div. 2010) (alterations in original) (internal quotations omitted) (quoting <u>Donato v. Twp. of Union</u>, GRC Complaint No. 2005-182, interim order (Jan. 31, 2007)).]

In <u>Bent</u>, the requestor sought information and records from a criminal investigation of his credit card activities conducted jointly by the township police, the United States Attorney for New Jersey, and a special agent of the

Internal Revenue Service. 381 N.J. Super. at 38. This court affirmed the GRC's denial, stating that "to the extent Bent's request was for records that either did not exist or were not in the custodian's possession, there was, of necessity, no denial of access at all." Ibid. This court emphasized that the custodian was not under any obligation to search beyond the township's files. Ibid.

Carter's request sought notices from the Appellate Division for LFB decisions addressing violations of N.J.S.A. 40A:9-22.9 over a five-year period. The custodian explained that the Division did not maintain "a database or list of records organized pursuant to . . . the general description of records requested[.]" The request did not identify a case name, party name, or docket number. Therefore, the custodian needed to "exercise discretion, survey employees or undertake research" to comply with the request. Specifically, the custodian had to search through thousands of cases to identify documents relevant to the request. The request required the custodian to "manually identify matters, locate records in storage through communication with the Division of Law, obtain those records, and review the entire case file for each potentially applicable case file to identify and compile responsive records." Such an endeavor constituted research, not a search, Burnett, 415 N.J. Super. at 515, which goes beyond what OPRA requires.

As we previously said, "[a] proper request [for information] 'must identify with reasonable clarity those documents that are desired.'" Burke, 429 N.J. Super. at 174 (quoting Bent, 381 N.J. Super. at 37). Requests for general information—like here—that must be "analyzed, collated and compiled" by the agency are outside the scope of OPRA. MAG, 375 N.J. Super. at 549. Requests requiring the custodian to analyze and evaluate information to respond are improper. See Burke, 429 N.J. Super. at 174; see also Bent, 381 N.J. Super. at 33-39 (denying a request for the "entire file" of the plaintiff's criminal investigation because it "neither identifies nor describes with any specificity or particularity of the records sought"); see also MAG, 375 N.J. Super. at 549 (holding the plaintiff's request invalid for failing to provide any identifiers other than "a broad generic description of a brand or type of case prosecuted by the agency in the past"); see also N.J. Builder's Ass'n v. N.J. Council on Affordable Hous., 390 N.J. Super. 166, 172 (App. Div. 2007) (denying a request for "any and all documents and data" for asking the agency to identify the documents rather than specifically describing the documents sought).

As Carter emphasized during oral argument before us, he specified a subject and the relevant timeframe, but he did not include a case name, party name, or docket number. The failure to include these identifiers would have

A-0483-18T1

forced the custodian to research and manually identify the documents. Like in N.J. Builder's, this request for "any and all" information placed the burden on the custodian to locate germane documents, which is improper.

Carter asserts his request comports with Burke. In Burke, the plaintiff requested government records in its possession or control regarding "EZ Pass benefits afforded to retirees of the Port Authority, including all . . . correspondence between the Office of the Governor . . . and the Port Authority[.]" 429 N.J. Super. at 171-72 (alterations in original). This court noted that the request was "confined to a specific subject matter that was clearly and reasonably described with sufficient identifying information[.]" Id. at 176. The plaintiff made it clear that he was specifically seeking written or electronic correspondence between two offices. Id. at 176-77. The request involved no research or analysis, but rather a search for and production of "readily identifiable records[.]" Id. at 178. But Carter's request required research of thousands of records.

Relying on Burnett and O'Boyle, Carter contends that the "government should not be able to shield its transactions from public scrutiny by the expedient of entrusting sole possession of relevant documents to third parties." See O'Boyle v. Borough of Longport, 426 N.J. Super. 1, 14 (App. Div. 2012). In

13

Burnett, we evaluated a request for "[a]ny and all settlements, releases or similar documents entered into, approved, or accepted" in the preceding two-year period from the County of Gloucester. 415 N.J. Super. at 508 (alteration in original). We determined that the request was not overly broad because it sought a specific type of document. Id. at 516. As noted in O'Boyle, the central holding in Burnett is that "documents accessible to the public which are generated on behalf of a public agency in the course of its official business are subject to disclosure no matter where they are located, even if they were never in the possession of the governmental entity." O'Boyle, 426 N.J. Super. at 14 (citing Burnett, 415 N.J. Super. at 517).

Although Burnett establishes that requested documents not in the respective agency's possession does not excuse the agency from its OPRA obligations to produce the documents, Carter's request is distinguishable. See 415 N.J. Super. at 516-17. In Burnett, the requested records were created by the respective agency in its official course of business, which is not the case here. Id. at 516. The Notices of Docketing sought here were records created by the court, only received by the Division in connection with each individual appeal. Because the records did not originate with the Division, the requested documents

are not classified separately in its files, thus requiring the custodian to conduct research to locate them.

Moreover, Carter's reliance on Scheeler v. Office of the Governor, 448 N.J. Super. 333 (App. Div. 2017) is misplaced. The plaintiff in Scheeler sought third-party OPRA requests submitted over a period of time. 448 N.J. Super. at 338-39. This court found that the requests were made with sufficient clarity, but we emphasized that the request did not require the agency to do research to identify the records. Id. at 344. In Scheeler, the requested documents were maintained by the agency and were reasonably identifiable without the need for research. Id. at 344.

Carter argues that the GRC incorrectly noted "[t]he request at issue here sought Notices from the Appellate Division for L[FB] decisions addressing violations of N.J.S.A. 40A:9-22.9 for a five[-]year period." (emphasis added). Carter asserts that this is factually inaccurate because he actually sought Notices "resulting from an appeal (pursuant to N.J.S.A. 40A:9-22.9) of any [LFB] final decision." (emphasis added). It can hardly be said that the GRC decision here was so mistaken as to demand "intervention and correction" on behalf of the interests of justice, therefore Carter's reliance on Clowes v. Terminix Intern., Inc., 109 N.J. 575, 588-89 (1988) is misplaced. Although the GRC may have

confused "pursuant to" and "violation of," Carter's request remains invalid as it required research, therefore falling outside the scope of the Division's OPRA obligations. It is the resulting process imposed on the custodian that makes the request impermissible.

Carter alleges that the custodian failed to work with him to try to resolve the matter before he filed a complaint. N.J.S.A. 47:1A-5(g) states that "the custodian may deny access to the [requested] record after attempting to reach a reasonable solution with the requestor that accommodates the interests of the requestor and the agency." An agency and a requestor compromise and work through problematic requests. Mason, 196 N.J. at 76. Carter urges that in accordance with Mason, the custodian should have made an effort to work through the issue—the overly broad request—with Carter. But the custodian responded to Carter's request with a denial seven days later. When Carter asked why his request was denied, the custodian provided her rationale two days later. Thereafter, Carter failed to modify his request, choosing instead to file a complaint with the GRC. Thus, the custodian worked with Carter.

Carter argues that the custodian's certification contained in the Statement of Information (SOI) filed with the GRC is insufficient because the custodian did not personally search for the records. Carter insists that the Executive

Assistant to the LFB, who conducted the search, should have submitted a certification to substantiate the SOI. In accordance with Paff v. New Jersey Department of Labor, agency personnel must produce sworn statements by agency personnel detailing the following information:

> (1) the search undertaken to satisfy the request;
>
> (2) the documents found that are responsive to the request;
>
> (3) the determination of whether the document or any part thereof is confidential and the source of the confidential information;
>
> (4) a statement of the agency's document retention/destruction policy and the last date on which documents that may have been responsive to the request were destroyed.
>
> [392 N.J. Super. 334, 341 (App. Div. 2007) (emphasis omitted).]

The GRC has discretionary authority to require additional certifications from any party where needed for appropriate adjudication of a complaint. N.J.A.C. 5:105-2.3(k), -2.4(j)(l). Sworn statements must be "made on personal knowledge, setting forth only facts which are admissible in evidence to which the [custodian] is competent to testify[.]" R. 1:6-6; see N. Jersey Media Grp. Inc. v. Office of the Governor, 451 N.J. Super. 282, 300 (App. Div. 2017).

A-0483-18T1

The custodian completed its search of records responsive to Carter's request by delegating the search of records to a LFB employee. An additional certification was unnecessary because the documents submitted with the custodian's SOI sufficiently detail the scope and process of the records search. The documents and emails exchanged between the custodian and the executive assistant demonstrate that the request was properly handled. Because the GRC is granted the discretionary authority to require supplemental certifications, its decision not to require an additional certification is not arbitrary, capricious or unreasonable.

Carter asserted in his complaint, dated September 14, 2016, that he was aware of three records that he sought. After identifying these records, Carter stated that "[b]ecause [Carter] is already in possession of these particular responsive records as the matter's appellant, there is no need for [the GRC] to order disclosure." The GRC misunderstood this to mean that Carter possessed all three Notices, therefore it did not provide him with any. Because the GRC did not provide Carter with the identified Notices, he argues that the GRC failed to disclose this record.

As previously mentioned, N.J.S.A. 47:1A-5(g) notes that a custodian may deny access to the record after attempting to reach a reasonable solution with

the requestor. The agency and requestor are encouraged to compromise and work through problematic requests. Mason, 196 N.J. at 76. Again, Carter did not make another request upon the custodian, specifically mentioning this requested record by name. In fact, the name of the requested record was not mentioned until Carter filed a complaint with the GRC. Carter made no effort to work with the custodian to clarify his request by either modifying it or submitting a new request with the sufficient identifying information. Accordingly, the GRC's misunderstanding that Carter already possessed the record is immaterial.

Carter argues that because his case contains "contested facts," he is entitled to a determination from the agency within thirty-days of receipt of his petition, pursuant to N.J.A.C. 1:1-4.1. Carter filed for a "contested case" status on October 12, 2016, but he ultimately did not receive a decision from the GRC until August 28, 2018. Carter points to the alleged LFB quorum issues and their failure to maintain certain records with the agency as "contested facts." Carter asserts that this delay was in bad faith, as the agency was aware that Carter sought these documents for another appeal he had pending against the LFB.

Under N.J.A.C. 1:1-2.1, a contested case is defined as:

> [A]n adversary proceeding . . . in which the legal rights,
> duties, obligations, privileges, benefits or other legal

> relations of specific parties are required by constitutional right or by statute to be determined by an agency by decisions, determinations, or orders, addressed to them or disposing of their interests, after opportunity for an agency hearing[.]

The quorum issue is controlled by OPRA. See N.J.S.A. 10:4-6 to 10:4-21. Therefore, quorum issues falling under this Act are not within the GRC's authority to adjudicate.

The GRC has no authority to regulate or adjudicate the manner in which an agency maintains its files or records.[4] Because these issues are not under the authority of the GRC to adjudicate, and they were not pertinent to the GRC's determination of this case, they are not considered "contested facts." Since Carter's case is not considered a "contested case," he was not entitled to the thirty-day determination timeframe enumerated in N.J.A.C. 1:1-4.1.

In turning to Carter's bad faith argument, he asserts that the agency purposely delayed his case (1) so that he could not seek interlocutory review, and (2) to stymy his efforts to argue another appeal he had pending against the LFB. See In re Appeal of the Dec. of the Franklin Twp. Ethics Bd. (Somerset

---

[4] See e.g., Toscano v. N.J. Dep't of Labor, Div. of Vocational Rehab. Serv., GRC Complaint No. 2010-58 (June 28, 2011); Kvederas v. Town of Morristown (Morris), GRC Complaint No. 2009-70 (Apr. 8, 2010); Gillespie v. Newark Pub. Sch., GRC Complaint No. 2004-105 (Nov. 9, 2004); Katinsky v. River Value Twp., GRC Complaint No. 200-68 (Nov. 13, 2003).

A-0483-18T1

Cty.) in FTEB Complaint #11-01, No. A-2561-15 (App. Div. Nov. 14, 2017).

As to Carter's interlocutory review argument, he relies on the time it took the GRC to issue its decision. Carter accuses the GRC of colluding with the Division.

The GRC noted in its final decision that its "established policy does not provide a process for complainants to request an expedited adjudication. The GRC instead adjudicates complaints in the order that they are received." Carter contends that this is not true because he reviewed their website and manually counted the subsequently filed complaints that were adjudicated before his. But Carter did not produce any evidence as to this assertion, though he offered to do so if required. We conclude the GRC's final decision was not arbitrary, capricious or unreasonable.

Carter argues that the GRC did not conduct its analysis of his complaint in a "summary or expedited manner" in accordance with N.J.S.A. 47:1A-6. He further urges that the GRC failed to abide by the temporal limits set in N.J.S.A. 47:1A-6 and -7(e). Under N.J.S.A. 47:1A-6, a person who is denied access to a government record by the custodian may either institute a proceeding to challenge the custodian's decision by either filing an action in the Superior Court or by filing a complaint with the GRC. "Any such proceeding shall proceed in

21

a summary or expedited manner." N.J.S.A. 47:1A-6. N.J.S.A. 47:1A-7(e) states that "[a]ll proceedings of the council . . . shall be conducted as expeditiously as possible." "[C]itizens are entitled to swift access to public records, and both the public and governmental bodies are logically entitled to have any disputes brought and addressed in the same, rapid manner." Mason, 196 N.J. at 69.

As the GRC noted in its final decision, it has an established procedure of addressing complaints in the order that they are received. The GRC merely addressed Carter's complaint when it was his turn. Because the GRC has an established, reasonable procedure in addressing complaints, the GRC's delay in response was not arbitrary, capricious, or unreasonable.

Carter contends that he is entitled to attorney's fees should he prevail in this appeal. Under OPRA, a requestor who prevails in any proceeding is entitled to reasonable attorney's fees. N.J.S.A. 47:1A-6. Because Carter has not prevailed in this proceeding, he is not entitled to attorney's fees.

To the extent that we have not specifically addressed Carter's remaining arguments, we conclude that they are without merit to warrant attention in a written opinion. R. 2:11-3(e)(1)(E). We otherwise affirm for the reasons expressed by the GRC.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

22

A-0483-18T1