**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1776-19T1

ROBERT LUTMAN,

    Plaintiff-Respondent,

v.

THE SANCTUARY AT CHERRY
HILL, LLC, STEVEN IMBURGIO
and STEPHANIE WHEELER,

    Defendants-Appellants.

_____

Argued December 2, 2020 – Decided  January 11, 2021

Before Judges Vernoia and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-0345-19.

John W. Leardi argued the cause for appellants (Buttaci Leardi & Werner LLC, attorneys: John W. Leardi, of counsel and on the briefs; Nicole P. Allocca, on the briefs).

William J. Martin argued the cause for respondent (Martin, Gunn & Martin, PA, attorneys; William J. Martin and Michael A. Mascino, on the brief).

PER CURIAM

Defendants The Sanctuary at Cherry Hill, LLC (Sanctuary), Steven Imburgio, and Stephanie Wheeler[1] appeal from a November 22, 2019 order enforcing a settlement agreement and awarding plaintiff Robert Lutman a $50,000 judgment, plus counsel fees and costs. We affirm, substantially for the reasons set forth by Judge Anthony M. Pugliese in his cogent oral opinion.

Sanctuary, a substance abuse and detox facility, surrendered its license when this action began. Imburgio was an officer and employee of Sanctuary, as well as the spouse of the sole member and owner of Sanctuary. Wheeler also was employed by Sanctuary.

In August 2018, Lutman accepted Imburgio's offer to work for Sanctuary, at a salary of $150,000, with a six-month guarantee and an expense account. On September 17, 2018, Wheeler asked plaintiff to provide Sanctuary with an unsecured loan in the amount of $50,000. Plaintiff declined this request and was terminated from his employment on October 5, 2018.

On February 14, 2019, plaintiff filed an amended complaint against defendants, alleging: (1) breach of contract; (2) violation of the New Jersey

---

[1] Defendants, at times, also are referenced collectively by the parties as "Sanctuary Defendants."

Conscientious Employee Protection Act;[2] and (3) retaliation in violation of common law.[3] Defendants moved to dismiss the amended complaint and their motion was denied. Thereafter, the parties engaged in negotiations through counsel, and the attorneys exchanged various settlement offers via email.

On August 22, 2019, when it appeared to the parties that Sanctuary would be sold, plaintiff's counsel advised by email that his client would accept $80,000 to settle the matter, but plaintiff "would need more information on payment: e.g. when it would be paid, will it be paid at [Sanctuary's] closing etc. If the sale doesn't go through by October 15th, then we may have to void the agreement. We can further discuss that." That evening, defendants' counsel emailed her response, advising, in part:

> I'm happy to discuss additional terms, but my client can only offer $50,000. As I am sure you are aware, there is a lengthy list of liens and judgments against The Sanctuary and Steve Imburgio. A settlement agreement now would ensure your client gets paid at closing.

Plaintiff's counsel replied about an hour later, stating:

> My client will accept the $50,000 contingent upon payment being at closing scheduled for October 1, 2019.

---

[2] N.J.S.A. 34:19-1 to -14.

[3] Additional counts in the amended complaint pertain to fictitious defendants not involved in this appeal.

A-1776-19T1

> If closing does not occur by October 15, 2019, then plaintiff . . . would want the option of voiding a settlement, extending the time until the new closing, or entering a consent judgment for that amount.

The next day, defendants' counsel rejected this offer and countered:

> I'm agreeable to extending the time until closing and/or the warranty to confess judgment, which I think are more than enough protection if it doesn't sell. My client wants finality so voiding the settlement agreement isn't an option. If those are acceptable terms, then, we're settled, and I can get you a draft agreement.
>
> [(Emphasis added).]

Minutes later, plaintiff's counsel accepted defendants' offer via email, simply stating, "Ok. We're settled then." In at least two emails thereafter, counsel for both parties referred to the settlement agreement as "our agreement" or the "settlement agreement."

On September 9, 2019, defendants' counsel drafted and forwarded a proposed settlement agreement to plaintiff's counsel. The agreement designated Sanctuary, Wheeler, and Imburgio as "Sanctuary Defendants," and provided "The Sanctuary Defendants shall, jointly and severally be responsible for paying [p]laintiff fifty thousand dollars . . . subject to and in accordance with the terms of this Paragraph 1." Further, the agreement confirmed defendants would pay plaintiff $50,000 within thirty days after the sale of Sanctuary. Also, the

4

agreement noted that in the event of an uncured default, "Sanctuary Defendants consent to the Warranty to Confess Judgment in the form attached hereto." The agreement referenced and attached a stipulation of dismissal with prejudice for each defendant. Further, the agreement, warranty to confess judgment and stipulations each provided signature lines for Sanctuary's owner, Imburgio and Wheeler. The documents were consonant with the settlement terms exchanged between counsel via email on August 23, 2019.

In October 2019, plaintiff was informed the sale of Sanctuary fell through. He moved to enforce the parties' agreement. On November 14, 2019, defendants Imburgio and Wheeler signed individual certifications prepared by counsel for Sanctuary defendants. The certifications were submitted in opposition to plaintiff's motion to enforce the settlement, and they contained strikingly similar language. For example, both Imburgio and Wheeler certified:

> At no time did I, on behalf of myself or the other Sanctuary Defendants, agree to the terms and conditions outlined in the proposed settlement agreement without a contingency that such a settlement only proceed after the sale of the Sanctuary and that any settlement payment be made from the proceeds of same.

At oral argument, defendants were represented by an attorney from the same firm as the attorney who negotiated the settlement on defendants' behalf. Defendants' counsel asserted, "there just simply is more than enough evidence

5

to indicate there was not a full meeting of the minds of a complete settlement." He added, "[y]es, the $50,000 was agreed to. There is a consent judgment that I've provided to [plaintiff's counsel]." Still, defendant's counsel posited "[t]here were other terms to be negotiated." Judge Pugliese disagreed, concluding defendants' argument was "interposed, I would say, inappropriately by your client after the fact that we have an agreement." The following additional colloquy occurred between defendants' counsel and Judge Pugliese:

> Defendants' Counsel: The only thing the parties had agreed upon that it was gonna be $50,000, and if for whatever reason the closing didn't happen or was delayed, there would be some mechanism for a consent judgment.
>
> Court: Right.
>
> Defendants' Counsel: Whether it was a warrant to confess –
>
> Court: Right.
>
> Defendants' Counsel: - -or a consent judgment . . . . The dispute here is not entry of a consent judgment against the business, against the Sanctuary at Cherry Hill. The dispute from the defendants' perspective is that consent judgment being entered against Ms. Wheeler and Mr. Imburgio, who are employees of the facility. If you look at the totality of - -
>
> Court: Who is [defendants' counsel] representing?

A-1776-19T1

Defendants' Counsel: [Defendants' counsel] is representing all three parties, Your Honor.

Defendants' counsel continued to press his argument that after August 23, 2019, there were communications between counsel, indicating that "not all of the terms of the settlement had been resolved." Judge Pugliese rejected this argument and found there was "a meeting of the minds . . . on August 23rd when we have the pertinent aspects that were being negotiated, the amount, the timing of payment into the future, the options of plaintiff to proceed if payment did not get made." The judge added:

> Anything that your client asked for after that, [plaintiff's counsel] had the right to just say send me the confession of judgment, it's over, we settled, which is pretty much what he did. He didn't entertain anything on his side of the ledger to ask for something more. He might have made some concessions relative to something that your client asked for after the fact. But in no circumstance did he change the core deal that was made that this was a settlement for $50,000 payable no later than October 15th only with the caveat that if it wasn't paid, his client had the option to extend or confess judgment. That's what I got.

Regarding the argument that Imburgio and Wheeler should not be bound by any settlement discussions, the judge disagreed. The judge questioned if defendants' counsel could point to any statement made by the attorney from his office who negotiated the settlement that informed plaintiff's counsel she was

7

representing only the corporate entity, Sanctuary. Defendants' counsel acknowledged to the court, "[t]here's no contention that at some point [plaintiff's counsel] was [apprised] that the discussions did not involve the other co-defendants." Accordingly, Judge Pugliese concluded that counsel who negotiated the settlement on defendants' behalf did not notify plaintiff's counsel that she did not have the "authority to negotiate on behalf of Imburgio or Wheeler" or that she was only making "a deal with respect to the corporate entity or the LLC." Therefore, the judge granted the motion to enforce the August 23, 2019 agreement against all three defendants, entered a $50,000 judgment in plaintiff's favor, and awarded him counsel fees and costs.

On appeal, defendants argue the trial court erred in enforcing a "purported agreement," because it was "not sufficient nor definite enough to establish unqualified assent by all the parties, nor does it specifically delineate the [d]efendants' performance." Alternatively, defendants argue the trial court "turned a blind eye to certifications that created a genuine dispute of material fact" as to whether the individual defendants were bound by the agreement, and that it erred by failing to conduct an evidentiary hearing "to establish the intent of the parties." We are not convinced.

A settlement agreement, like a contract, requires an offer and acceptance by the parties, and it "must be sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'" Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992) (quoting West Caldwell v. Caldwell, 26 N.J. 9, 24-25 (1958)). A legally enforceable contract "requires mutual assent, a meeting of the minds based on a common understanding of the contract terms." Morgan v. Sanford Brown Inst., 225 N.J. 289, 308 (2016). Once parties to a contract "agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract." Weichert Co. Realtors, 128 N.J. at 435. Essential terms are those that go to the "heart of the alleged agreement." Satellite Ent Ctr., Inc. v. Keaton, 347 N.J. Super. 268, 277 (App. Div. 2002). Alternatively, if the parties do not agree to one or more essential terms, their contract is ordinarily unenforceable. Ibid.

A settlement of a legal claim between parties is a contract like any other contract, Nolan v. Lee Ho, 120 N.J. 465, 472 (1990), which "may be freely entered into and which a court, absent a demonstration of 'fraud or other compelling circumstances,' should honor and enforce as it does other contracts," Pascarella v. Bruck, 190 N.J. Super. 118, 124-25 (App. Div. 1983) (quoting Honeywell v. Bubb, 130 N.J. Super. 130, 136 (App. Div. 1974)).

The "[i]nterpretation and construction of a contract is a matter of law for the court subject to de novo review." Spring Creek Holding Co. v. Shinnihon U.S.A. Co., 399 N.J. Super. 158, 190 (App. Div. 2008) (quoting Fastenberg v. Prudential Ins. Co. of Am., 309 N.J. Super. 415, 420 (App. Div. 1998)). Thus, no special deference is accorded a trial court's interpretation of an agreement entered into by the parties. Kaur v. Assured Lending Corp., 405 N.J. Super. 468, 474 (App. Div. 2009).

On a disputed motion to enforce a settlement, the court should hold a hearing to establish the facts, "unless the available competent evidence, considered in a light most favorable to the non-moving party, is insufficient to permit the judge, as a rational factfinder, to resolve the disputed factual issues in favor of the non-moving party." Amatuzzo v. Kozmiuk, 305 N.J. Super. 469, 474-75 (App. Div. 1997).

Guided by these principles, we discern no basis to disturb Judge Pugliese's November 22, 2019 order. The record reflects there was no genuine dispute that defendants reached an agreement with plaintiff, notwithstanding assertions made by defendants or their attorney well after August 23, 2019. Indeed, consistent with the parties' meeting of the minds, as evidenced in the August 23, 2019 email exchange between counsel, defendants' attorney drafted and

submitted not only a settlement agreement, but stipulations of dismissal and a warranty to confess judgment. The email exchange also confirmed the amount of money to be paid to plaintiff, when it would be paid, and if not paid upon the sale of Sanctuary, that defendants consented to the entry of a warranty to confess judgment. Further, immediately prior to reaching the agreement, it was defendants' counsel who insisted "voiding the settlement agreement isn't an option." The fact that the parties discussed the matter further in subsequent emails does not lead us to a different conclusion. See Lahue v. Pio Costa, 263 N.J. Super. 575, 596 (App. Div. 1993) ("Where the parties agree upon the essential terms of a settlement, so that the mechanics can be 'fleshed out' in a writing to be thereafter executed, the settlement will be enforced notwithstanding the fact that the writing does not materialize because a party later reneges.").

As to defendants' contention that a plenary hearing was necessary to divine the intent of the parties, we are satisfied there were no genuine issues of material fact warranting such a hearing, as "the available competent evidence, considered in a light most favorable" to defendants was sufficient to allow Judge Pugliese to resolve the parties' dispute without an evidentiary hearing. Amatuzzo, 305 N.J. Super. at 474-75.

Finally, we are not persuaded that Judge Pugliese erred by holding each defendant bound by the August 23, 2019 agreement. "New Jersey law recognizes two types of authority to settle a lawsuit which would bind [an attorney's] client: actual, either express or implied, and apparent authority." Burnett v. Cnty. of Gloucester, 415 N.J. Super. 506, 513 (App. Div. 2010) (citations omitted). Apparent authority is created when "the client's voluntary act has placed the attorney in a situation wherein a person of ordinary prudence would be justified in presuming that the attorney had authority to enter into a settlement, not just negotiations, on behalf of a client." Amatuzzo, 305 N.J. Super. at 475.

"[I]t is the clear policy of our courts to recognize acts by . . . attorneys . . . as valid and presumptively authorized . . . ." Jennings v. Reed, 381 N.J. Super 217, 231 (App. Div. 2005) (citation omitted). "Consequently, an attorney is presumed to possess authority to act on behalf of the client, and the party asserting the lack of authority must sustain 'a heavy burden to establish that [their] attorney acted without any kind of authority[.]'" Ibid. (citations omitted). The factfinder must consider the totality of the circumstances to determine whether apparent authority exists. N.J. Lawyers' Fund for Client Prot. v. Stewart Title Guar. Co., 203 N.J. 208, 220 (2010).

12

Here, after a series of emails were exchanged between counsel, defendants' counsel prepared a settlement agreement and warranty to confess judgment which referred to all three defendants as "the Sanctuary Defendants." These documents, as well as the stipulations of dismissal, included signature lines for each defendant. Additionally, defendants' counsel agreed at oral argument that the attorney who negotiated the settlement represented all three defendants, and that at no time did she inform plaintiff's counsel she did not have the authority to negotiate on their behalf. Under these circumstances, it is evident defendants' counsel had apparent authority to settle on behalf of Sanctuary, Wheeler and Imburgio.

In sum, a binding settlement was reached, and embodied in the written agreement defendants' counsel drafted. Judge Pugliese did not err in enforcing it.

To the extent we have not addressed defendants' remaining arguments, we are satisfied they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13                                                                    A-1776-19T1